[Civ. No. 27133.   Second Dist., Div. Four.   Sept. 6, 1963.]

CHARLEY ELIOPULOS, Plaintiff and Appellant, v. NORTH RIVER INSURANCE COMPANY, Defendant and Respondent.

Herbert H. Hiestand, Jr., for Plaintiff and Appellant.

Bolton, Groff & Dunne, John S. Bolton and Henry E. Kappler for Defendant and Respondent.

JEFFERSON, J.—This is an action for declaratory relief brought by plaintiff insured against defendant insurer to determine plaintiff's right to uninsured motorist coverage under an automobile liability insurance policy issued to plaintiff by defendant. Plaintiff appeals from a judgment in favor of defendant.

The parties are in agreement on the following facts: Plaintiff, having purchased an automobile, applied on August 18, 1959, for automobile liability insurance with the defendant. One of defendant's agents took plaintiff's application, and with the authorization of defendant, entered into a 15-day "binder" agreement with plaintiff. Defendant later issued to plaintiff the requested policy of insurance. The policy on its face contained the words "date issued," and the numerals "9-22-59." The face of the policy contained the statement, "policy period . . . from: August 18, 1959 to August 18, 1960." It was delivered to plaintiff on October 1, 1959.

Effective September 18, 1959, the Insurance Code of the State of California was amended to include section 11580.2 which declares in part: "No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be *issued or delivered* in this State to the owner or operator of a motor vehicle . . . unless the policy contains, or has added to it by endorsement, a provision insuring the named insured . . . for all sums which he shall be legally entitled to recover as damages for bodily injury from the owner or operator of an uninsured motor vehicle, with coverage limits at least equal to the financial responsibility requirements specified in sections 16059 and 16451 of the Vehicle Code; provided, however, that the insurer and the insured may by supplemental agreement waive application of the provision covering damage caused by an uninsured motor vehicle." (Emphasis added.)

At the time the policy was issued, plaintiff did not know what uninsured motorist coverage was, did not request it, nor did defendant assess a premium charge for it.

On March 30, 1960, while acting within the course and scope of his employment with the California Highway Patrol, plain-

tiff was involved in a traffic accident with an "uninsured motorist" (within the meaning of § 11580.2), whose negligence proximately caused the accident. As a result of injuries sustained, plaintiff was awarded workmen's compensation benefits in the amount of $7,100, and was retired with a medical discharge from the Highway Patrol at the age of 31. Following defendant's denial that plaintiff's policy with defendant contained uninsured motorist coverage, and refusal to proceed under the arbitration clause provided in the policy, plaintiff brought this action.

The trial court found that, as a matter of law, uninsured motorist coverage was not included in the policy issued plaintiff by defendant. The court based this holding on the finding that the policy was issued and constructively delivered to plaintiff on August 18, 1959, one month prior to the effective date of Insurance Code, section 11580.2. In holding that plaintiff was not entitled to uninsured motorist coverage, the trial court, in its memorandum reasoned as follows: The binder agreement which the parties entered into on August 18, 1959, was in all respects definite and certain except for the determination of the amount of the premium to be paid by plaintiff, a determination which would be made after certain information was supplied by plaintiff. The amount of the premium was not subject to future negotiations between the parties, but was subject only to calculation by a then known formula employed by those in the insurance business. Plaintiff was therefore entitled to his policy as of the date of the "binder," the typewritten policy being nothing more than a mere memorial of the then existing agreement. Since plaintiff was entitled to his policy as of August 18, 1959, a constructive delivery occurred on that date. The court concluded that the insurance policy was, therefore, issued and delivered to plaintiff prior to September 18, 1959, the effective date of Insurance Code section 11580.2.

Plaintiff maintains that the evidence was insufficient as a matter of law to permit the application of the doctrine of constructive delivery. Plaintiff also maintains that the trial court erred as a matter of law in refusing to construe the words in defendant's policy by their plain meaning, or to concede that at least an ambiguity existed between the stated date of issue and the stated term of the policy, requiring application of the rules of construction formulated for interpreting ambiguous insurance contracts.

Defendant concedes that, effective September 18, 1959, In-

surance Code, section 11580.2 made uninsured motorist coverage mandatory in every policy issued or delivered in the State of California, unless waived by supplemental agreement.

In discussing the effect of section 11580.2, the court, in *Voris* v. *Pacific Indemnity Co.*, 213 Cal.App.2d 29, 31 [28 Cal.Rptr. 328], stated that "The statute enters as an implied term into each policy or rider subsequently issued [citations] . . . ." [See also *Hendricks* v. *Meritplan Ins. Co.*, 205 Cal.App.2d 133, 136 [22 Cal.Rptr. 682].)

▮ Therefore, if defendant's policy was "issued or delivered" to plaintiff within the meaning of section 11580.2 after September 18, 1959, it is clear plaintiff is entitled to uninsured motorist coverage. The fact no additional premium was assessed for such coverage is immaterial.

The trial court's finding that plaintiff was entitled to the policy as of August 18, 1959, the date of the binder, because nothing remained to be done by either side after that date except the mathematical formula computations of premium charges, and that the doctrine of constructive delivery was therefore applicable, is not supported by the evidence.

There is a distinct difference between a temporary binder and the policy of insurance subsequently issued. In *Apparel Mfrs.' Supply Co.* v. *National Auto & Cas. Ins. Co.*, 189 Cal. App.2d 443, at p. 454 [11 Cal.Rptr. 380], the court quoted from Corpus Juris Secundum (44 C.J.S., Insurance, § 230, p. 957), as follows: " 'For the sake of convenience, contracts of insurance sometimes exist in two forms: (1) A preliminary contract intended to protect the applicant pending investigation of the risk by the company or until the policy can be properly issued. (2) The final contract or policy itself.' " (See also *Parlier Fruit Co.* v. *Fireman's Fund Ins. Co.*, 151 Cal.App.2d 6, 19-20 [311 P.2d 62].)

▮ "The binder issued on an application for insurance is a mere memorandum of the most important terms of a preliminary contract of insurance, intended to give temporary protection pending the investigation of the risk by the insurer or until the issuance of a formal policy." (*Fort Valley Coca-Cola Bottling Co.* v. *Lumbermen's Mut. Cas. Co.*, 69 Ga.App. 120 [24 S.E.2d 846, 850]; see also *State Distributing Corp.* v. *Travelers Indemnity Co.*, 224 N.C. 370 [30 S.E.2d 377, 379].)

▮ The "binder" issued to plaintiff in the case at bench stated: "This binder may be cancelled at any time by the insured or by the broker or agent who placed the risk by

notice to the company or by surrender of this binder stating when thereafter such cancellation shall be effective. This binder may be cancelled by the Company by written notice to the insured and to the agent or broker who placed the risk . . . . A premium charge . . . will be made for the time this binder is in effect *if no policy of insurance in place hereof is issued and accepted by the insured.* (Italics added.)

It is evident to us that the binder given plaintiff in this action is no different from the typical binder issued in the insurance industry; providing temporary protection pending investigation of the prospective insured to determine whether to accept or reject his application.

The evidence presented shows that defendant exercised its right to investigate plaintiff before deciding to accept his application. A casualty supervisor employed by defendant's agent testified that he investigated, processed and passed on plaintiff's application to determine if the risk was desirable or not. In doing so, applicant's driving record, age and credit report were obtained and checked. If determined to be unfavorable, the application would have been subject to rejection. He testified further that, as sometimes occurred, the Safe Driver Application did not accompany the application for insurance; that it was received by him on September 16 and was rated on September 18; and thereafter it was processed for typing.

Inasmuch as defendant retained the right to investigate, rate, accept or reject plaintiff's application, the latter was not in fact legally entitled to the policy on August 18, the date he was given the binder, and the doctrine of constructive delivery as of that date is inapplicable. This was not a case of deferred delivery to permit typing of the policy, but rather an agreement to provide temporary coverage subject to the company's acceptance of plaintiff as a risk and a computation of premium based upon defendant's investigation. Plaintiff was free to accept or reject any insurance policy subsequently offered since all of the terms of the policy including the amount of premium to be charged were neither known nor mutually agreed upon.

Defendant cites *Guipre v. Kurt Hitke & Co.*, 109 Cal.App. 2d 7 [240 P.2d 312], in support of its statement that a binding contract of insurance may be effected without manual delivery of the policy to the insured where an authorized agent binds the insurer company as of the time of application. That case involved an oral binder of coverage by an agent without

a policy ever being delivered, and the court held that, where all the details of the insurance transaction had been covered by the parties except delivery of the policy, the contract of insurance is effective from the date of the oral acceptance of the risk, although a loss occurs before the written policy is actually delivered.

In the case before us all of the details of the insurance transaction had not been covered by the parties, as indicated above, and it was not known at the time the binder was issued whether the investigation to be made by the company of plaintiff's driver's record and credit report would justify the company in accepting him. True, had an injury occurred between the issuance of the binder and the issuance of the policy, defendant would have been liable under the binder for the type of coverage extended by the binder under the case just cited and under other authorities. However, liability under the policy, as distinguished from the binder, commenced upon the delivery of the policy after defendant insurer completed its investigation and made its proposal as to terms and premium and upon acceptance thereof by the insured.

Defendant contends, but with little by way of evidence to support its contention, that the words "date issued" followed by the numerals "9-22-59" simply referred to the date that the policy was physically typewritten. Defendant's policy, on its face, states that it was issued September 22, 1959, and it is axiomatic that "[t]he terms used in an insurance policy should be given their plain, ordinary, and popular meaning." (*Hyer* v. *Inter-Insurance Exchange etc. of So. Cal.*, 77 Cal.App. 343, 347 [246 P. 1055].) In its brief defendant contends that the words "date issued" and the date which followed, are placed above the declarations of the policy and in a space reserved for the company's convenience, which is used for coding and other information that is recorded as a matter of internal procedure. However, such date appears on the declarations page which is incorporated by reference in the policy itself, and which is attached to and incorporated by reference in the policy itself.

We find that there is no room for any strained construction and that the plain meaning of the words "date issued" should be applied under the circumstances presented in this case.

In *McMillan* v. *State Farm Ins. Co.*, 211 Cal.App.2d 58, at page 62 [27 Cal.Rptr. 125], the court said: "[T]he court owes a duty to construe what is definite and certain in the

contract provisions; and there is no room for interpretation here. We simply read the clear and controlling language and hold accordingly. [Citation.]''

Had the trial court concluded that the two declarations made by defendant on the face of the policy, namely, (1) "that the date of issue was September 22, 1959," and (2) "that the term of the policy was from August 18, 1959 to August 18, 1960," were ambiguous, the court had the duty to resolve the ambiguity in favor of plaintiff.

"If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to the peril insured against . . . the amount of liability . . . the language will be understood in its most inclusive sense, for the benefit of the insured." (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].)

" 'It is a well recognized rule of law that if any uncertainties or ambiguities appear in an insurance policy which may be resolved by either one of two reasonable constructions, the one which is most favorable to the insured and which will give life, force and effect to the policy should be adopted. The insurance company having prepared the policy and all documents used in connection with its issuance, should not be heard to put such a construction upon an ambiguity, caused by it, as will defeat the policy and take from the beneficiary the very purpose and object of the insurance,. if a reasonable construction upholding the insurance can be had that does no violence to the language used and the clear intention of the parties.' " (*Narver* v. *California State Life Ins. Co.*, 211 Cal. 176, 180-181 [294 P. 393. 71 A.L.R. 1374] ; and quoted in *Miller* v. *United Ins. Co.*, 113 Cal.App.2d 493, 497 [248 P.2d 113].)

In considering the policy before us, it does no violence to the language used to construe the purpose in stating the term of the policy as covering the period from August 18, the date of application, as a device for avoiding a separate premium for the period from August 18 to September 22, the stated date of issue of the policy.

Furthermore, it is uncontroverted that the policy was not physically delivered to plaintiff until October 1, 1959, at least 12 days after the effective date of Insurance Code section 11580.2. We are of the opinion that by insertion of the provision into the statute that henceforth, no policy shall be "issued *or delivered*" without providing for uninsured motor-

ist coverage, the Legislature intended that the statute would be applicable to policies physically delivered after September 18, 1959, the effective date of the amendment. It is clear the word "issued" when used in reference to an insurance policy, often means the delivery and acceptance of the policy. (*Brix v. Peoples Mutual Life Ins. Co.*, 124 Cal.App. 65, 66 [12 P.2d 108].) Thus, in the use of the expression "issued or delivered," if the Legislature had intended the meaning "constructive delivery" only, it would have been entirely unnecessary to have used anything more than the word "issued," since the latter expression has been held to include constructive delivery. Under the rules of legislative interpretation we must assume that the Legislature by the use of the words "issued or delivered," had something more in mind than the term "issued" implies. We believe it reasonable to assume that by the addition of the word "delivered," the Legislature manifested the intention that the amendment would apply to all policies physically delivered after the date of its enactment.

Defendant contends that if uninsured motorist coverage is a part of the policy issued by defendant to plaintiff, then the amount it is required to pay should be reduced by the amount paid under the Workmen's Compensation Law.

In 1959, when plaintiff's policy was issued, Vehicle Code sections 16059 and 16451 provided liability limits of not less than $10,000 for bodily injury to one person in any one accident.

Effective September 15, 1961, Insurance Code section 11580.2 was amended to provide (subd. (g)) that any loss payable to a person under uninsured motorist coverage may be reduced by the amount paid or payable under any workmen's compensation law, exclusive of nonoccupational benefits. We interpret this section to mean that an insurance company has an absolute right to reduce the amount it is obligated to pay by the amount of workmen's compensation benefits received.

However, section 11580.2 as originally enacted, in effect at the time plaintiff's policy was issued, contained no provision reducing the amounts payable for workmen's compensation payments received by the insured. The Attorney General in an opinion dated March 6, 1960, (35 Ops.Cal.Atty.Gen. 71), stated that a policy of insurance issued after the enactment of section 11580.2 may contain a provision that a loss payable under uninsured motorist coverage may be reduced under that coverage by the amounts paid under workmen's

compensation laws. Assuming, but not deciding, that this opinion is correct, it is clear that the statute as originally enacted provided no absolute right to any reduction, in the absence of a provision authorizing this in the policy.

Defendant does not contend that section 11580.2 as amended should be given retroactive effect, but contends that the courts should consider the provisions contained in the voluntary plan of uninsured motorist coverage that defendant had been writing at the time the policy was issued to plaintiff, and which contained a provision that the amounts payable would be reduced by the amounts paid under the Workmen's Compensation Law.

However, the coverage to which we hold plaintiff entitled, is not provided for by agreement of the parties, or under any plan of insurance defendant may have been writing at the time plaintiff's policy was issued. It is coverage impliedly written into the policy by operation of law. "[T]his section of the Insurance Code [§11580.2] becomes in effect a part of every policy of insurance to which it is applicable to the same effect as if it was written out in full in the policy itself." (*Hendricks* v. *Meritplan Ins. Co., supra,* p.136.)

This being the case, since the statute in effect at the time the policy was issued did not provide for any reduction of amounts payable by sums paid under workmen's compensation laws, and there was no contract between the parties for such reduction, none may be exacted.

The judgment is reversed.

Burke, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied October 1, 1963, and respondent's petition for a hearing by the Supreme Court was denied October 23, 1963.