[No. E008184. Fourth Dist., Div. Two. Nov. 19, 1990.]

ELSIE COLTHERD, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, LANTANA
HEATING AND AIR CONDITIONING et al., Respondents;
ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Claimant and Respondent.

**COUNSEL**

Thomas H. Cahraman for Petitioner.

No appearance for Respondents.

Rogers, Bennett & Henderson and Charles L. Eddleman for Claimant and Respondent.

## OPINION

## TIMLIN, J.—

### INTRODUCTION

Elsie Coltherd (petitioner), the widow of employee Brian Coltherd, has petitioned this court to review a decision and order of the Workers' Compensation Appeals Board (WCAB) granting claimant and respondent St. Paul Fire and Marine Insurance Company's (St. Paul's) application for a $10,000 lien on the workers' compensation death benefits of $95,000 awarded to petitioner and her children.

### FACTS

Brian and Elsie Coltherd apparently purchased a combined homeowners and automobile liability policy from St. Paul.[1] The policy allegedly contained uninsured motorist benefits as required by Insurance Code section 11580.2, subdivision (a)(1),[2] with a maximum benefit of $100,000. The policy *allegedly* contained language that the uninsured motorist benefits would be adjusted or reduced in an amount equal to workers' compensation benefits received by either Brian or Elsie.

Brian, who was employed by Lantana as a heating and air conditioning technician, was killed in an automobile accident while in the course and scope of his employment.

Petitioner filed a civil action against the driver of the other automobile, as required by section 11580.2, subdivision (i)(1) in order to be eligible to receive the uninsured motorist benefits. She also filed a workers' compensation application against Lantana and its compensation carrier, Beaver Insurance. The employer and its carrier apparently initially denied that workers' compensation covered the circumstances of Brian's death. St. Paul apparently thereafter advanced petitioner $15,000 in uninsured motorist benefits, without waiving its claimed rights for reduction under section 11580.2, subdivision (h)(1).

---

[1] We say "apparently," because the policy in question is not a part of the record certified by the WCAB as being a full, true and correct copy of the record of the proceedings before it. Furthermore, it appears, for yet another reason, that the policy in question was never entered into evidence before the workers' compensation trial judge: the "Opinion and Decision" of the trial judge states, in relevant part, "The policy, *apparently*, contained language that the uninsured motorists benefits would be reduced in an amount equal to workers' compensation benefits paid." (Italics added.)

Because the policy is not part of the record, our future references to its contents are simply allegations made by St. Paul in connection with its response to the petition.

[2] All further statutory references will be to the Insurance Code unless otherwise indicated.

Petitioner ultimately recovered workers' compensation death benefits in the amount of $95,000. St. Paul then filed a form entitled "Notice and Request for Allowance of Lien" with the workers' compensation system, stating that "This request and claim for lien is for: (Mark appropriate box) . . . X Uninsured motorist benefits policy overpayment[.]" Although the form stated "Note: Itemized statements must be attached," no statement, and no copy of the policy in question, was attached.

The workers' compensation trial judge granted St. Paul's request for a lien for the $10,000 it had "overpaid" petitioner, basing his decision on the "apparent" contents of the policy. (See fn. 1 *ante*.) After noting that "it is elementary law that an uninsured motorists insurance carrier has a right to deduct the workers' compensation received by the claimant from the liability imposed by the terms of its policy. 1 *Herlick California Workers' Compensation Law* Third Edition, Section 12.28," the trial judge ordered the compensation carrier, Beaver Insurance, to pay to petitioner and her children their pro rata shares of the $95,000, "less $10,000.00 of St. Paul's lien," and to pay petitioner's attorney $8,500, which sum represented 10 percent of the benefits awarded (i.e., 10 percent of the $95,000 less the $10,000 St. Paul lien).

Petitioner petitioned the WCAB for reconsideration of the trial judge's decision and order. Her petition was denied. She then petitioned us for a writ of review of the WCAB's decision and order, which we granted, ordering the WCAB to certify and file with us that portion of the record which was before it in this matter, so that we could review the decision and order. Such record was so certified and filed.

We conclude, upon such review, that there was no substantial evidence before the workers' compensation trial judge to support a finding that St. Paul had "overpaid" petitioner $10,000, or any sum, in that St. Paul's right to reimbursement, by necessity, must be based upon the contractual language of the policy it entered into with petitioner and her husband, and that policy was never entered into evidence. We also conclude that even if the policy had been entered into evidence, and it had contained a provision entitling St. Paul to a reduction under section 11580.2, subdivision (h)(1), St. Paul's representations as to the character of the benefits provided under that policy demonstrate that WCAB lacked jurisdiction to award St. Paul a lien on petitioner's workers' compensation death benefits.

## DISCUSSION

*There Is No Substantial Evidence to Support a Finding That St. Paul "Overpaid" Petitioner by Any Amount*

Section 11580.2, subdivision (a)(1) provides, in relevant part, that "[n]o policy of bodily injury liability insurance covering liability arising out of the

ownership, maintenance, or use of any motor vehicle, . . . *shall* be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage . . . for all sums within the limits which he, she, or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle," although the insurer and the insured "*may*, by agreement in writing, in the form specified in paragraph (2) or paragraph (3)," delete such coverage in whole or in part. (Italics added.) In other words, all automobile liability insurance policies *must* offer uninsured motorist coverage, which the parties *may* agree, in writing, to delete.

■ Even if the insured does not waive his or her right to uninsured motorist coverage, the insurer and insured may nonetheless contract to modify such coverage. Subdivision (h)(1) of section 11580.2 provides, in relevant part, that "Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person *may* be reduced: [¶] (1) By the amount paid and the present value of all amounts payable to him or her, his or her executor, administrator, heirs, or legal representative under any workers' compensation law, exclusive of nonoccupational disability benefits." (Italics added.)

This court has ruled, in *Waggaman v. Northwestern Security Ins. Co.* (1971) 16 Cal.App.3d 571, 575, 579 [94 Cal.Rptr. 170], that section 11580.2, subdivision (h) simply gives the insurer and insured the *right* validly to contract for the reduction of policy benefits in the amount of workers' compensation benefits received by the insured, but does not give the insurer the right to such a reduction in the absence of a specific provision in the policy to that effect. Thus, the trial judge's conclusion that "it is elementary law that an uninsured motorists insurance carrier has a right to deduct the workers' compensation received by the claimant from the liability imposed by the terms of its policy," is an incomplete statement of the law; such a right exists only if the policy provides for it.[3]

---

[3] We note in passing that another treatise on the workers' compensation system, 2A Larson, The Law of Workmen's Compensation (1989) § 71.23(b), footnote 36, contains a reference to another case, *Eliopulos v. North River Ins. Co.* (1963) 219 Cal.App.2d 845 [33 Cal.Rptr. 449], which indicates that the holding in *Eliopulos* is directly contrary to that in *Waggaman*. According to Larson, "The court [in *Eliopulos*] held that, although no provision for such reduction [of uninsured motorist benefits by amounts paid under workers' compensation laws] appeared in the insurance contract, the amendment gave the insurer the absolute right to reduce payments under the policy by the amount of workmen's compensation benefits *whether a provision to that effect was included in the insurance contract or not.*" (Italics added.)

We think this interpretation of *Eliopulos* is overly broad. First, the court held, in respect to the statute in effect at the time the policy before it was issued, that the statute provided no ab-

St. Paul's reliance on our opinion in *Corley* v. *Workmen's Comp. Appeals Bd.* (1971) 22 Cal.App.3d 447 [99 Cal.Rptr. 242], disapproved on another ground by *Roe* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 884, 892 [117 Cal.Rptr. 683, 528 P.2d 771], for the proposition that petitioner, as a matter of law, is not entitled to retain both the workers' compensation benefits and the uninsured motorist benefits, is misplaced. *Corley* was written by Justice Kaufman, who also concurred in the *Waggaman* opinion. *Corley* involved the *statutory* right of the injured employee's employer and the employer's compensation carrier, pursuant to Labor Code sections 3858 and 3861, to offset the compensation benefits paid to the employee by the net amount of the employee's recovery against the third party tortfeasor who caused the injury. (22 Cal.App.3d at pp. 452-453.) *Corley* is thus clearly distinguishable: it involved a statutory right of offset; pursuant to the interpretation by *Waggaman*, this case involves a statutory authorization to *contract* for a reduction. Although St. Paul insists on referring to petitioner's retention of both sources of benefits as a "double recovery," such is not the case; petitioner and her husband contracted for uninsured motorist benefits and presumably the cost of this kind of coverage was included in the premiums they paid. In the absence of a reduction provision in the insurance policy, there can be no double recovery when petitioner is entitled to workers' compensation benefits because of her husband's status as an employee killed in the scope of his employment and when she is *also* entitled to insurance benefits because she and her spouse contracted for and paid for such benefits.[4]

Here, based on (1) the absence in the record of either a copy of the policy or any indication that its contents were proved through some alternative method, (2) the trial judge's opinion which stated that the policy "apparently" contained such a reduction provision, and (3) petitioner's objections to St. Paul's representations about the language contained in the policy as being unsupported by the record, we are compelled to conclude that there is no sufficient evidence to support a finding that St. Paul had "overpaid"

---

solute right to any reduction of the uninsured motorist benefits "in the absence of a provision authorizing this in the policy." (219 Cal.App.2d at p. 855.) It then commented, *in dicta*, as to the statute as later amended (and as not relevant to the policy before it) that the provision in Insurance Code section 11580.2, subdivision (g) that any loss payable under uninsured motorist coverage may be reduced by the amount paid or payable under the workers' compensation law, meant "that an insurance company has an absolute right to reduce the amount it is obligated to pay by the amount of workmen's compensation benefits received." (219 Cal.App.2d at p. 854.) This last quote, besides being dicta, is certainly not a clear statement that an insurer has an absolute right to reduce payments "*whether a provision to that effect was included in the insurance contract or not.*"

[4] And even assuming that the policy of insurance here contains a reduction provision, petitioner's retention of, or claim to, any such excess amounts would not be a "double recovery," but a possible breach of her contractual obligations under the policy, for which St. Paul can pursue its remedies in a civil action.

petitioner $10,000 or any amount, let alone that it was entitled to a lien therefor.

*Even If St. Paul Could Show That It Had "Overpaid" Petitioner and Was Therefore Entitled to Reimbursement, It Would Not Be Entitled to a Lien on Petitioner's Workers' Compensation Death Benefits Award*

There is an alternate reason for our conclusion that the order granting St. Paul a lien on petitioner's workers' compensation benefits must be reversed.

Labor Code section 4903 provides that the WCAB "may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i)." The WCAB may not allow a lien against an award of workers' compensation benefits in satisfaction of an obligation not specified in subdivisions (a) through (i); if it does so, it acts in excess of its authority and without jurisdiction. (*Prudential Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 776, 780 [151 Cal.Rptr. 537, 588 P.2d 239]; *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 196 [113 Cal.Rptr. 206, 520 P.2d 1022]; *Rowland* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 448, 451 [136 Cal.Rptr. 1].)[5]

Subdivisions (a) through (i) of section 4903 do not list an overpayment of uninsured motorist insurance benefits as an obligation which may be secured by a lien on workers' compensation benefits. In fact, it has been specifically held that the lien provisions for moneys advanced for the living expenses of an injured worker or his or her dependents was "to protect persons who *advance credit or loan money* to such dependents for necessary living expenses and is not intended for the benefit of a debtor who *pays a debt legally owing under a contractual obligation.*" (*Glass Containers, Inc.* v. *Ind. Acc. Com.* (1953) 121 Cal.App.2d 656, 660 [264 P.2d 148], italics added, cited with approval in *Ogdon* v. *Workmen's Comp. Appeals Bd.,* *supra,* 11 Cal.3d at p. 197 and *Rowland* v. *Workers' Comp. Appeals Bd.,* *supra,* 66 Cal.App.3d at p. 451.)

Nor is Labor Code section 4903.1, relied upon by St. Paul, of any help to its position that it is entitled to a lien on petitioner's award. That section provides that the WCAB "shall determine, on the basis of liens filed with it, whether any benefits have been paid or services provided by a health care

---

[5] St. Paul contends, because Labor Code sections 4903 and 4903.1 "were amended by the Legislature since the cases cited by Petitioner were decided[, that] the liens excluded by those cases would now be permitted." However, St. Paul fails to make any further attempt to explain *how* such subsequent amendments altered the holdings of *Ogdon, Rowland,* or *Prudential* as those holdings relate to the issue here, undoubtedly because, as our own review of those cases indicates, the amendments had no relevant effect.

service plan, a group disability policy, including a loss of income policy, a self-insured employee welfare benefit plan, or a hospital service contract, and its award or approval shall provide for reimbursement for benefits paid or services provided under such plans . . . ." St. Paul, the provider of a homeowners and automobile insurance policy, simply does not fall within the categories of the entities enumerated in section 4903.1.

St. Paul also relies on the "reasoning and decision" in *Beverly* v. *WCAB* (1969) 34 Cal.Comp.Cases 156, a case which it describes as follows: "In *Beverly, supra,* the Workers' Compensation applicant was injured in an automobile collision, and his automobile insurer extended benefits. The insurer later filed a lien to recover those payments. The lien was granted by the WCAB and upheld by the Appellate Court. St. Paul merely asks for the same result here."

St. Paul's reference to the *Beverly* case, as cited, is rather misleading. What appears at 34 Cal.Comp.Cases 156 is not an opinion containing "reasoning and decision," but rather a "Digest of Case Denied Judicial Review." St. Paul cites no primary or secondary authority, nor are we aware of any, that the summary denial of a petition for judicial review of decisions of the WCAB has any precedential value. Thus, the lien in *Beverly* was only "upheld" by the appellate court in the sense that the court refused to grant review, thus leaving the parties in the workers' compensation proceeding in the posture in which they had been put by the WCAB.

Because 34 Cal.Comp.Cases 156 is merely a digest of the underlying case, it is impossible to tell what kind of policy the applicant had purchased from the insurer, and what provisions the policy contained for reimbursement of amounts paid by the insurer which the applicant might otherwise obtain from the workers' compensation system.

Furthermore, as to the basis for the award of a lien in *Beverly*, according to the digest of that case, the benefits extended by the insurer were specifically for the payment of reasonable medical expenses incurred by the insured in excess of the benefits paid or payable under the workers' compensation law. The WCAB concluded that it had jurisdiction to allow a lien for medical treatment provided by reason of an industrial injury. This conclusion appears to us to be supported by the specific provision of Labor Code section 4903, subdivision (b) and related case law holding that any person, including a medical insurer, who incurs medical and hospital expenses on behalf of an injured employee who has sustained industrial injuries, is entitled to a lien on any workers' compensation benefits for the reasonable value of such services. (*Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 461 [113 Cal.Rptr. 711, 521 P.2d 1103]; *Dept. of Employment* v. *Ind. Acc. Com.* (1964) 227 Cal.App.2d 532, 544-545 [38 Cal.Rptr. 739].) Here, on the

other hand, there was no evidence that the benefits paid by St. Paul to petitioner were for reasonable medical expenses. There is no showing that St. Paul was entitled to a lien under any one of the specific and exclusive categories set out in section 4903. (See *Rowland* v. *Workers' Comp. Appeals Bd., supra,* 66 Cal.App.3d at p. 451.)

*Petitioner's Attorney Is Entitled to an Award of Attorneys' Fees on the Amount of the Award Wrongfully Subjected to a Lien in Favor of St. Paul*

Petitioner's attorney was awarded 10 percent of petitioner's net recovery of benefits (i.e., the $95,000 of workers' compensation benefits less the $10,000 lien awarded to St. Paul) as attorneys' fees. He has requested that we award him 10 percent of the $10,000 which we have determined should not have been subject to a lien in favor of St. Paul. However, the authority to determine the reasonableness of such fees is vested in the WCAB (Lab. Code, § 4903, subd. (a)), so we shall remand the matter to that body for determination of a reasonable attorneys' fee for the legal services rendered in connection with this proceeding.

## DISPOSITION

The orders of the WCAB awarding (1) St. Paul a lien on petitioner's award of $95,000 workers' compensation death benefits of $10,000, and (2) petitioner's attorneys' fees in the amount of $8,500 (10 percent of the "net" workers' compensation award of $85,000) are annulled. The matter is remanded to WCAB for a determination of the reasonable attorneys' fees to be awarded petitioner's attorney.

Hollenhorst, Acting P. J., and Dabney, J., concurred.