[No. D012493. Fourth Dist., Div. One. Nov. 6, 1991.]

JOAN AHERN et al., Plaintiffs and Appellants, v.
RAY DILLENBACK et al., Defendants and Respondents.

**COUNSEL**

Maynard Kartvedt for Plaintiffs and Appellants.

Schaffer & Lax, Stephen A. Lax, Jordon E. Harriman, Marjorie E. Motooka, Jeanette L. Viau, Gray, Cary, Ames & Frye, R. Reaves Elledge, Jr., Marie Wright-Travis, Fisher, Nielsen & Thurber and Roger H. Nielsen for Defendants and Respondents.

**OPINION**

**TODD, J.**—Joan and David Ahern appeal from a judgment of dismissal entered after the trial court granted a motion for summary judgment. At issue is whether the terms of Insurance Code[1] section 11580.2 regarding mandatory uninsured motorist coverage apply to a policy issued to cover driving in Europe and North Africa.

[1]All statutory references are to the Insurance Code unless otherwise specified.

## Facts

In September 1982, the Aherns, residents of Connecticut who were visiting Monterey, California, decided to purchase an automobile insurance policy that would provide coverage for their upcoming anticipated travels in Europe. The Aherns contacted Ray Dillenback of the Dillenback and Lomanto Agency, a Monterey insurance agency, and told Dillenback they wanted a foreign policy that would provide full coverage or the "best coverage that exists." On September 29, 1982, Dillenback filled out an overseas automobile insurance application from International Service Insurance Agency and Joan Ahern signed the application for the Aherns' 1981 Honda Prelude, which was registered in England. In a deposition, Joan Ahern said she told Dillenbeck they "want[ed] the best policy there is." She maintains Dillenbeck advised her she would receive full insurance coverage with policy limits that would safely protect her and her husband.

The application form indicates the following coverages: comprehensive; bodily injury liability, and property damage liability.[2] At the time, Joan Ahern was generally unaware of uninsured motorist coverage and the subject did not come up. The application stated the policy period was to be from October 28, 1982, to October 28, 1983. The preprinted form also contained the following language: "To Place This Insurance in Force, Complete the Application in Full - Check the Coverages Desired, and Enclose the Required Down Payment . . . ." Also, typed on the application form was the following: "Policy Must Be in Greenwich Ct Prior to Oct 15 1982." International Service Insurance Agency of Fort Worth, Texas, secured a policy (policy No. 66-522764) from National Union Fire Insurance Company of Pittsburgh, Pennsylvania. The declarations sheet shows the policy was countersigned by National Union Fire Insurance Company in Fort Worth, Texas, on October 6, 1982. The policy was effective from October 28, 1982, to October 28, 1983. On October 15, 1982, the Aherns received the policy in Greenwich, Connecticut. A form transmittal letter from International Service Insurance Agency that accompanied the policy stated in part:

"You may feel completely secure in the knowledge that you have best overseas automobile insurance available at your new assignment - a Standard American Type Policy written in English Language issued by an American Company and containing No Extra Exclusions or Restrictions. Don't gamble on anything less!"

By letter of September 19, 1983, from Germany, Joan Ahern requested her international policy be renewed "under the same conditions for 1 year." A

---

[2]The declarations page for the policy indicates the same coverages.

renewal policy (policy No. 66-522764/RC 244 339) with an effective policy period of October 28, 1983, to October 28, 1984, was issued and sent to the Aherns in Spain.

On June 8, 1984, Joan Ahern, while driving her automobile in the vicinity of Valenciennes, France, was seriously injured[3] in a hit-and-run automobile accident with an unidentified and uninsured motorist. By letter of September 20, 1984, Joan Ahern sought insurance benefits under the policy. By letter dated October 31, 1984, her claim was denied. On June 7, 1985, the Aherns filed a lawsuit against Dillenback, Dillenback and Lomanto Insurance Agency, National Union Fire Insurance Company and International Service Agency stating two causes of action: negligent procurement of insurance and loss of consortium. The first cause of action stated that the defendants negligently failed to procure the following coverages: collision; medical payments, and uninsured motorist. On March 6, 1990, National Union Fire Insurance Company filed a motion for summary judgment. On March 8, 1990, International Service Insurance Agency joined in the motion. On April 27, 1990, by invitation of the trial court, Dillenback, and Dillenback and Lomanto Insurance Agency joined the motion for summary judgment. On the same date, to facilitate an expedited appeal, counsel for the Aherns stipulated to dismissing the Aherns' claims for negligent failure to procure collision and medical payments coverages. The trial court then granted summary judgment in favor of all defendants.

DISCUSSION

I

Code of Civil Procedure section 437c, subdivision (c) provides in part, that "[a] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ While this summary procedure is " 'drastic' (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]) . . . the purpose of a summary judgment 'is to expedite litigation by avoiding needless trials' (*Barry* v. *Rodgers* (1956) 141 Cal.App.2d 340, 342 [296 P.2d 898]) . . . ." (*Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976-977 [243 Cal.Rptr. 277].) ■ The moving party has the burden to furnish supporting documents establishing the claims of the adverse party are entirely without merit on any legal theory. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d

---

[3]As a result of her injuries, Mrs. Ahern's leg was amputated.

822].) The moving parties' affidavits must set forth facts entitling them to a judgment as a matter of law. (*Ibid.*)

The gist of the Aherns' cause of action for negligent procurement of insurance is that the defendants breached their duty by (1) not including various coverages in the Ahern policy notwithstanding the fact Joan Ahern did not request these coverages or (2) not advising John Ahern about the availability.

Civil Code section 1714 provides, in part:

"(a) Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ." ■ The elements of a cause of action for negligence are commonly stated as (1) a legal duty to use due care; (2) a breach of that duty; (3) a reasonably close causal connection between that breach and the resulting injury; and (4) actual loss or damage. (Prosser & Keeton, The Law of Torts (5th ed. 1984) § 30, pp. 164-165; 6 Witkin (9th ed. 1988) Summary of Cal. Law, Torts, § 732, p. 60.) In the typical negligence action, a determination that there is no duty giving rise to liability is essentially a conclusion that the weight of public policy warrants a departure from Civil Code section 1714. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

"The question of 'duty' is decided by the court, not the jury. [Citations.]" (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)

■ The question posed here is whether the defendants owed a duty to the Aherns to procure the additional coverage or to advise them about the availability of such coverage.

With respect to the defendant insurance company, *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441 [208 Cal.Rptr. 511] is dispositive. In discussing an insurer's duty to advise the insured either of the availability of coverage in addition to that requested or of the inadequacy of the policy limits, the court noted:

"[A]bsent some conduct on the part of the insurer consistent with assuming broader duties, the insurer's fiduciary duties are limited to those arising out of the insurance contract and do not encompass the duties asserted." (162 Cal.App.3d at p. 443.)

With respect to the defendant agents in this case, *Jones* v. *Grewe* (1987) 189 Cal.App.3d 950 [234 Cal.Rptr. 717] is dispositive. In *Jones*, Justice Kennard, writing for the Court of Appeal, stated:

"Ordinarily, an insurance agent assumes only those duties normally found in any agency relationship. This includes the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured. [Citation.] The mere existence of such a relationship imposes no duty on the agent to advise the insured on specific insurance matters. [Citations.] 'An agent may point out to [the insured] the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so; nor is the insured under an obligation to respond.' [Citation.]" (189 Cal.App.3d at p. 954.) The court in *Jones* went on to state:

"The general duty of reasonable care which an insurance agent owes his client does not include the obligation to procure a policy affording the client complete liability protection . . . ." (189 Cal.App.3d at p. 956.)

Nothing in the record indicates that the Aherns had a special relation with any of the defendants. Hence, as a matter of law, the defendants did not owe the requisite duty to the Aherns to sustain their cause of action for negligent procurement of insurance. (189 Cal.App.3d at p. 954.)

## II

As this case involves a hit-and-run accident involving a presumably uninsured motorist, we must consider whether the policy issued to Joan Ahern included uninsured motorist coverage as a matter of law. This is so because of section 11580.2, which statutorily imposes special duties upon insurers of motor vehicles.     The court in *Enterprise Ins. Co.* v. *Mulleague* (1987) 196 Cal.App.3d 528, 534 [241 Cal.Rptr. 846], succinctly summarized the import of section 11580.2:

"The effect of section 11580.2 is clear. Unless the insurer and the named insured execute a written waiver in the form prescribed by subdivision (a)(2) of section 11580.2, an insurance policy governed by its terms will be held to provide uninsured motorist coverage in the amounts mandated in that section. [Citations.] This is true regardless of whether or not the policy purports to extend or to exclude uninsured motorist coverage. [Citations.] And it is so regardless of the fact the insurer failed to charge a premium for the coverage. [Citations.]"

The Aherns contend (1) under California's Insurance Code, uninsured motorist coverage is mandated in an individual automobile insurance

liability policy, (2) the policy issued to Joan Ahern did not come within three express exceptions to this mandate, and (3) therefore, the policy includes uninsured motorist coverage as a matter of law. The contention is without merit.

We begin with the state's uninsured motorist law, section 11580.2, which provided at the relevant time in pertinent part:

"(a)(1)   No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, except for policies which provide insurance in the Republic of Mexico issued or delivered in this state by nonadmitted Mexican insurers, shall be *issued or delivered in this state* to the owner or operator of a motor vehicle, *or* shall be issued or delivered by any insurer licensed in this state *upon any motor vehicle then principally used or principally garaged in this state*, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the limits specified in subdivision (m) and in no case less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code insuring the insured, his heirs or his legal representative for all sums within such limits which he, or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. . . ." (Stats. 1982, ch. 736, § 2, pp. 2926-2927, italics added.)

The Court of Appeal in *Campbell* v. *State Farm Mut. Auto. Ins. Co.* (1989) 209 Cal.App.3d 871, 874-875 [257 Cal.Rptr. 542], was asked to interpret section 11580.2 and summarized long-standing principles of construction in relation to the statute:

"Public policy favors compensation for innocent casualties of the ever more dangerous enterprise of negotiating our highways, and instructs us to construe the uninsured motorist statute in favor of coverage wherever possible. Any doubtful language in the statute should therefore be resolved in favor of [insured]. But if 'the [uninsured motorist] section is clear in the context of the factual situation involved, the principle of liberal interpretation may not be applied to give a forced construction or one which inserts a requirement not contained in the section.' " (Citations omitted.)

As indicated by the underscored language in the above-quoted portion of the statute, section 11580.2 applies to policies (1) "issued or delivered" in California or (2) covering motor vehicles that are "then principally used or principally garaged in this state." (See *Modglin* v. *State Farm Mut. Automobile Ins. Co.* (1969) 273 Cal.App.2d 693, 699-700 [78 Cal.Rptr. 355], ["The

statute expressly provides that uninsured motorist protection is to be included in a policy in either of two instances: (1) Where the policy is issued or delivered in California to the owner or operator of a motor vehicle; or, in the alternative, (2) where a policy is '. . . issued or delivered by an insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state. . . .' (Ins. Code, § 11580.2, subd. (a).)"].) The Ahern policy does not fit into either category.

█ With respect to the first category, the policy was neither issued nor delivered in California.

Here, the policy, effective October 28, 1982, to October 28, 1983, was issued by National Union Fire Insurance Company in Texas and was forwarded to the Aherns in Connecticut by International Service Insurance Agency of Fort Worth, Texas.

The fact that Joan Ahern applied for the insurance policy on September 29, 1982, in Monterey, California, does not have any bearing on whether the policy was "issued" in California. █ An insurance contract, like other contracts, requires mutual assent in the form of an offer and acceptance; therefore, an application for insurance, standing alone, does not constitute an insurance policy upon which judgment can be recovered. (12 Appleman, Insurance Law & Practice (1981) §§ 7121, 7151, pp. 436, 524-526.)

In *Ball* v. *California State Auto. Assn. Inter-Ins. Bureau* (1962) 201 Cal.App.2d 85, 87 [20 Cal.Rptr. 31], Justice Tobriner, writing for the Court of Appeal, discussed the terms "issued" and "delivered" used in section 11580.2:

"In *Anderson* v. *Mutual Life Ins. Co.* (1913) 164 Cal. 712 [130 P.2d 726], Justice Sloss in passing upon a policy of insurance which 'bore date the twenty-second day of May, 1908' (p. 713), held that as between the date of signing the insurance policy and the act of delivery of the policy, the date of ' "issuance" ' was '[t]he day upon which, by the agreement of the parties, the risk attached' (p. 716), that is, the date which the policy bore. In similar vein, the court in *Bloom* v. *Pacific Mut. Life Ins. Co.* (1927) 85 Cal.App. 419 [259 P. 496] held that the "Delivery is complete[d] . . . when the policy is sent to the local agent to be unconditionally delivered. . . ." [Citation.] The issuance or delivery of the policy either in the normal import of the words or the characterization of the courts occurs at a specific time." █ Under *Ball* and *Anderson*, the policy was not "issued" until October 28, 1982, "the day upon which, by the agreement of the parties, the risk attached" (*Anderson* v. *Mutual Life Ins. Co.* (1913) 164 Cal. 712, 716 [130 P. 726]) or "the date which the policy bore" (*Ball, supra,* 201 Cal.App.2d at p. 87).

In *Eliopulos* v. *North River Ins. Co.* (1963) 219 Cal.App.2d 845 [33 Cal.Rptr. 449], the Court of Appeal also interpreted the terms "issued" and "delivered" as used in section 11580.2. In an opinion by Justice Jefferson, the court observed "the word 'issued' when used in reference to an insurance policy, often means the delivery and acceptance of the policy" and "has been held to include constructive delivery." (*Eliopulos, supra,* 219 Cal.App.2d at p. 854.) The court in *Eliopulos* went on to conclude that because the Legislature used the words "issued or delivered," the legislative intent of section 11580.2 must have been to include physical as well as constructive delivery of the policy. (219 Cal.App.2d at p. 854.) For our purposes, the discussion in *Eliopulos* is further authority for the proposition that an insurance policy is not issued until the insurer has accepted the application.

In *Hartford Acc. & Indem. Co.* v. *McCullough* (1965) 235 Cal.App.2d 195 [44 Cal.Rptr. 915], the Court of Appeal also discussed the terms "issued"[4] and "delivered" in the context of insurance law. Among other things, the court in *Hartford* observed:

" 'Whether an insurance policy has or has not been delivered after its issuance so as to complete the contract and give it binding effect does not depend on its manual delivery to, or possession by, insured, but rather on the intention of the parties as manifested by their acts or words. . . .' " (235 Cal.App.2d at p. 204.)

This observation supports our conclusion the policy was not delivered in California. It is undisputed the insurance policy was delivered to the Aherns in Connecticut on October 15, 1982, *as requested* by Joan Ahern on the insurance application. The parties, as evidenced by the application, intended delivery in Connecticut, not California. The parties' intent that the policy go into effect on October 28, 1982, is evidenced by the application and the policy itself. Thus, for our purposes, the fact the policy was received by the Aherns before (Oct. 15, 1982) it became effective (Oct. 28, 1982) is immaterial. It is also undisputed that the renewal was delivered to the Aherns in Spain, not California. Under these facts, it cannot be argued delivery was in California.

It is abundantly clear that the Ahern policy was not issued in California nor delivered in California "either in the normal import of the words or the characterization of the courts . . . ." (*Ball, supra,* 201 Cal.App.2d 85, 87.)

---

[4]With respect to the meaning of "issue," the court in *Hartford Acc. & Indem. Co., supra,* stated: " ' "The words 'issue', 'issuance', and 'issued' in reference to an insurance policy, are used in different senses, sometimes as meaning the preparations and signing of the instrument by the officers of the company, as distinguished from its delivery to insured, and sometimes as meaning its delivery and acceptance . . . ." ' " (235 Cal.App.2d at p. 199.) Thus, under one definition of "issue" contained in *Hartford,* the policy was issued in Texas where the officials of the insurance company countersigned the policy on October 6, 1982. While this differs from the October 28, 1982, issuance date under *Ball, supra,* 201 Cal.App.2d 85 and *Anderson, supra,* 164 Cal. 712, the result is the same for our purposes—the policy was not issued in California.

Nor does the record support a conclusion that the policy was written for a vehicle "then principally used or principally garaged in this state . . . ." (§ 11580.2, subd. (a)(1).) It is undisputed the policy was written to cover an automobile licensed in England. The application form stated the coverage was for Belgium, the declarations sheet stated it was a foreign automobile policy covering Belgium and other locations per amendatory endorsement ("99 Europe" and North Africa) and the policy, labeled a "Foreign Automobile Policy," included the following notice: "This is a Foreign Automobile Policy and does not cover in the United States of America or the Dominion of Canada." Given these undisputed facts, it cannot be argued the Ahern policy covered a vehicle that was then principally used or garaged in California.

Thus, under the plain language of section 11580.2, the policy issued to Joan Ahern was not subject to the state's mandatory uninsured motorist coverage since it was neither "issued or delivered in this state" nor issued to cover a "motor vehicle then principally used or principally garaged in this state." (§ 11580.2, subd. (a)(1).)

The Aherns argue, however, that section 11580.2 is applicable because the policy was issued in California based on the following language contained in the preprinted application form: "To PLACE THIS INSURANCE IN FORCE, COMPLETE THE APPLICATION IN FULL - CHECK THE COVERAGES DESIRED AND ENCLOSE THE REQUIRED DOWN PAYMENT . . . ." In essence, the Aherns' argument is that the meaning of this language is tantamount to making coverage effective on tendering the premium check and if coverage is effective at that point, the policy has been issued. While we could quibble over the meaning of the exact language in the preprinted application form, we do not dispute that it is ambiguous and that the ambiguity should be interpreted in favor of the Aherns. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) Therefore, the language in the preprinted application form relied upon by the Aherns must be construed to mean the coverage was effective with the tendering of the check. However, it does not follow from this point that the policy was issued.

As counsel for the Aherns recognized at oral argument, the application form was in fact a binder or contract of temporary insurance. ■ Under California law, a contract of temporary insurance may arise from completion of an application for insurance and payment of the first premium if the language of the application would lead an ordinary lay person to conclude that coverage was immediate. (See *Smith* v. *Westland Life Ins. Co.* (1975) 15 Cal.3d 111 [123 Cal.Rptr. 649, 539 P.2d 433].) More than a century ago, the

United States Supreme Court explained the reason valid contracts of temporary insurance are permitted:

"If parties could not be made secure until all the formal documents were executed and delivered especially where the insuring company is situated in a different State, the beneficial effect of this benign contract of insurance would often be defeated and rendered unavailable." (*Eames* v. *Home Ins. Co.* (1877) 94 U.S. 621, 627.)

The distinction between binders and insurance policies was articulated in *Eliopulos, supra,* 219 Cal.App.2d 845, 850:

"There is a distinct difference between a temporary binder and the policy of insurance subsequently issued. In *Apparel Mfrs.' Supply Co.* v. *National Auto & Cas. Ins. Co.* [(1961)], 189 Cal.App.2d 443, at p. 454 [11 Cal.Rptr. 380] the court quoted from Corpus Juris Secumdum (44 C.J.S., Insurance, § 230, p. 957), as follows: ' "For the sake of convenience, contracts of insurance sometimes exist in two forms: (1) A preliminary contract intended to protect the applicant pending investigation of the risk by the company or until the policy can be properly issued. (2) The final contract or policy itself." ' (See also *Parlier Fruit Co.* v. *Fireman's Fund Ins. Co.* [(1957)], 151 Cal.App.2d 6, 19-20 [311 P.2d 62].)

" 'The binder issued on an application for insurance is a mere memorandum of the most important terms of a preliminary contract of insurance, intended to give temporary protection pending the investigation of the risk by the insurer or until the issuance of a formal policy.' [Citations.]"

██ Thus, a binder is an independent contract, separate and distinct from the permanent insurance policy. It is intended to give temporary protection pending the investigation of the risk by the insurer and until issuance of a formal policy or rejection of the insurance application by the insurer. Hence, the fact that the effective date of insurance coverage may predate issuance of the policy under a written binder (see 1 Cal. Insurance Law & Practice (1991) § 9.12[2], p. 9-47) does not mean the insurance policy has been issued. Rather, a binder evidences that the policy has not yet been issued since the binder is effective until one of two events: the insurance application is rejected or the policy is issued.[5]

Just as the term "binder" has a well-known significance in the parlance of insurance contracts, so does the term "issue" as we indicated in our discussion, *ante.* ██ Here, in accordance with the well-established meaning

---

[5]In California, within 90 days after the issuance of a binder, the insurance company must issue a policy setting forth a premium and terms that are identical to those indicated in the binder. (§ 382.)

of "issuance" in insurance law, the policy was issued in Texas on October 6, 1982, when the insurer's officials countersigned the policy. At that point, the binder or temporary contract of insurance ceased to be effective.[6]

As the court stated in *Travelers Indem. Co.* v. *Kowalski* (1965) 233 Cal.App.2d 607, 609 [43 Cal.Rptr. 843]: "We recognize that the statute we are reviewing must be given a liberal interpretation. Nevertheless, as was said in *Wisdom* v. *Eagle Star Ins. Co.* [(1963)], 211 Cal.App.2d 602, 605 [27 Cal.Rptr. 599], this 'does not vitiate the elementary principle that the judicial function is simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted, or omit what has been inserted. (Code Civ. Proc., § 1858.) Courts cannot depart from the meaning of language in a statute which is free from ambiguity, even though the consequence would be to defeat the object of the statute. [Citation.]' " We find no ambiguity in the above discussed provisions of section 11580.2.[7]

The Aherns argue there are only three exceptions to section 11580.2's requirement of uninsured motorist coverage for motor vehicle liability insurance policies issued and delivered in this state and none applies here: coverage in Mexico issued by a nonadmitted Mexican insurer; waiver as executed under the provisions of section 11580.2, subdivision (a)(2); and policies in which automobile liability is offered as incidental to some other basic coverage. Since there is no specific exception for foreign or overseas automobile policies, the Aherns argue, the statute's requirement of uninsured motorist coverage must apply to the policy issued to Joan Ahern. Again this argument ignores the plain language of section 11580.2, which imposes the mandate of uninsured motorist coverage only on those policies that are either issued or delivered in California or cover vehicles then principally used or garaged in California.

To support their argument that uninsured motorist coverage is mandated, the Aherns point to language in section 11580.2, subdivision (a)(1), and section 11580.05,[8] the legislative declaration of public policy in this area, expressly excluding Mexican insurance. The Aherns contend that the Legislature's failure to exclude foreign insurance other than Mexican insurance in

---

[6]Under these circumstances, we need not consider whether section 11580.2 applies to binders.

[7]Any suggestion that the statute is ambiguous in this regard is meritless and therefore the liberal rule of construction of this statute in favor of the insured is not applicable.

[8]Section 11580.05 provides in pertinent part: "The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies issued or delivered in this state shall be as stated in this article, that this article expresses the total public policy of this state respecting the content of such policies, and that no provision of this article or of the Vehicle Code shall apply to policies affording automobile liability insurance or motor vehicle liability insurance in the Republic of Mexico issued or delivered in this state by a nonadmitted Mexican insurer. . . . Except as provided above, any other

these two statutes indicates that the legislative intent was that all foreign insurance other than Mexican insurance was to be included.

We disagree. The exclusionary language regarding Mexican insurance in section 11580.2, subdivision (a)(1), was added to the statute by a 1976 amendment. (Stats. 1976, ch. 1145, § 4, p. 5190.)[9] The 1976 legislation also included the following statement of legislative intent:

"Sections 1 to 4, inclusive, of this act are enacted in response to the court case of *Contreras* v. *America, Compania General de Seguros, S.A.* [(1975)] 48 Cal.App.3d 270, and it is the intent of the Legislature in enacting this act to reverse the effect of the Contreras case, and to provide that certain provisions of any policy which provides insurance covering liability arising out of the ownership, maintenance, or use of any vehicle in the Republic of Mexico issued by a Mexican insurance company shall not be subject to the effect of the *Contreras* case." (Stats. 1976, ch. 1145, § 5, p. 5196, italics added.) As we pointed out in *Seguros La Provincial, S.A.* v. *Fremont Indemnity Co.* (1983) 138 Cal.App.3d 923, 929 [188 Cal.Rptr. 331], insurance for accidents in Mexico presents a special problem because Mexican law does not recognize foreign insurance policies, including American insurance policies, as complying with Mexican financial responsibility laws. Therefore, one traveling in Mexico, insured only by an American insurance policy, is subject to arrest and vehicle impoundment following an accident. (See § 11580.6.) Thus, there was a specific reason for the express exclusion of Mexican insurance in the statutes. Moreover, that portion of the Aherns' argument based on the express declaration of public policy contained in section 11580.05 again ignores the language "issued or delivered in this state." (§ 11580.05.) We are dealing here with a policy that was neither issued nor delivered in California, and, therefore, neither section 11580.05 nor 11580.2 is applicable.[10]

The Aherns rely on *Mission Ins. Co.* v. *Brown* (1965) 63 Cal.2d 508 [47 Cal.Rptr. 363, 407 P.2d 275] for the proposition that section 11580.2's mandatory requirement of uninsured motorist coverage extends to the geographical area the underlying insurance policy was written to cover.[11] The reliance is misplaced. In *Modglin, supra,* 273 Cal.App.2d 670, 699, the court stated *Mission Ins. Co., supra,* stood for the following proposition:

policy issued or delivered in this state affording liability insurance with respect to ownership, maintenance, or use of a motor vehicle shall comply with the requirements set forth in Sections 11580, 11580.1 and 11580.2."

[9]The language excluding Mexican insurance policies in section 11580.05 also was added by the same 1976 legislation. (Stats. 1976, ch. 1145, § 2, p. 5186.)

[10]Again, any contention this argument applies to the binder contract is irrelevant since the claim here arose long after the binder had terminated. (See fn. 6, *ante.*)

[11]*Mission Ins. Co.* involved an accident that occurred in Mexico, within 75 miles of the United States border, on a trip that did not exceed 10 days. The policy included limited

"Where a policy is *issued and delivered in California,* it protects the insured with uninsured motorist protection even when driving in states or neighboring countries not having the California requirements." (Italics added.)

Here, of course, we are dealing with a policy that was neither issued nor delivered in California. Nor did the policy cover a vehicle then principally used or garaged in this state. Hence, unlike *Mission Ins. Co.,* section 11580.2 is not applicable here.

DISPOSITION

Affirmed.

Kremer, P. J., and Benke, J., concurred.

---

Mexican coverage, specifically, " 'occasional trips into that part of . . . Mexico lying not more than 75 miles' from the United States border for a period not exceeding 10 days." (63 Cal.2d. at p. 509.) However, an endorsement to the policy, which added uninsured motorist coverage, contained the following provision: " 'This endorsement applies only to accidents which occur . . . within the United States of America, its territories or possessions, or Canada.' " (*Ibid.*) The Supreme Court held "the territorial limitation" contained in the endorsement was void as contrary to section 11580.2 and public policy. (*Id.* at p. 510.) In so doing, the Supreme Court was interpreting the endorsement as contrary to the public policy behind section 11580.2. The Supreme Court pointed out that purpose of the statute was "to minimize losses to the people of California who are involved in accidents with uninsured or financially irresponsible motorists . . . ." (63 Cal.2d at p. 510.) The high court went on to say the statute expresses the public policy that an insured should "be protected against damages for bodily injury caused by an uninsured motorist in the same territory in which the policy covers him for liability." (*Ibid.*)