[Civ. No. 10236. Fourth Dist., Div. Two. Apr. 7, 1971.]

FLOYD P. WAGGAMAN, Plaintiff and Respondent, v.
NORTHWESTERN SECURITY INSURANCE COMPANY,
Defendant and Appellant.

## COUNSEL

Donald S. Gillespie and William A. Flory for Defendant and Appellant.

Ryneal, Hunt and Palladino and Leonard Sacks for Plaintiff and Respondent.

## OPINION

**GABBERT, J.** — Floyd P. Waggaman, claimant-respondent, sustained bodily injury in an automobile collision which occurred in the performance of his employment. The other party involved in the collision was an uninsured motorist. Waggaman began negotiations with his liability insurance carrier, respondent-appellant Northwestern Security Insurance Company, for payment under the uninsured motorist provision of the policy. No agreement could be reached, so, pursuant to the policy, the dispute was submitted to an arbitrator.

The arbitrator awarded Waggaman damages of $8,250, reduced by $2,985 in workmen's compensation payments already made. At the arbitration hearing, Northwestern requested permission to call expert witnesses who would give opinion evidence as to the amount of future workmen's compensation payments that Waggaman would be eligible to receive by reason of permanent disability. The arbitrator refused to permit such testimony, and Northwestern made an offer of proof. No transcript of the arbitration hearing, if there was one, was submitted either to the trial court or to this court. The arbitration award contains a finding which specifically

excludes any reduction in Waggaman's recovery for the value of future workmen's compensation payments.[1]

Northwestern filed a petition in superior court to vacate the arbitrator's award; the court denied the petition and confirmed the award of the arbitrator. The petition was submitted on the record, the award of the arbitrator and the briefs of the parties. No oral evidence was taken, nor were declarations or other substitutes for oral evidence offered. The parties waived findings of fact and conclusions of law. This appeal is taken by Northwestern from the judgment confirming the award of the arbitrator and denying its petition for rehearing of the arbitration.

Northwestern contends, as a basis for vacating the award, its rights were substantially prejudiced by refusal of the arbitrator to hear evidence material to the controversy. (Code Civ. Proc., § 1286.2, subd. (e).) The claim is based on Insurance Code section 11580.2, subdivision (h), which provides in part: "Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person *may* be reduced: (1) By the amount paid and the present value of all amounts payable to him under any workmen's compensation law exclusive of non-occupational disability benefits." (Italics added.) The insurance policy here involved contains an almost identical clause in its uninsured motorist provision, except for the language "Any loss payable . . . *shall* be reduced by" any such pay-

---

[1]The award made by the arbitrator reads as follows:

"Award in favor of claimant, Floyd P. Waggaman, in the sum of $8,250 from which sum Workmen's Compensation benefits in the stipulated amount of $2,985 shall be deducted for a net award of $5,265.

"A specific finding is made that Northwestern Insurance Company is not entitled in this Arbitration proceeding to further deduct any amount that claimant Waggaman might potentially receive in the future for permanent disability under Workmen's Compensation laws. Accordingly, no additional hearings on this subject will be ordered.

"The reasons for this finding include the following:

"(1) A significant distinction exists in the wording used in Insurance Code Section 11580.2(g) and Northwestern's policy, namely, *may be reduced* and *shall be reduced*. Under accepted rules of legal construction, the document must be construed strictly against the drafter.

"(2) The term, *and the present value of all amounts payable,* can be interpreted as referring to instances where the claimant has already secured an amount pursuant to agreement (compromise and release) or by order (permanent disability rating), but which amount, although fixed and determined, has not yet been paid to the claimant at the time of the arbitration hearing. In such instances, where the sum to be received in the future is vested in the claimant and the amount established, credit must necessarily be given the auto carrier.

"(3) It is further felt that Northwestern is fully protected in the event claimant hereafter obtains further sums under Workmen's Compensation laws. Northwestern may impress a lien on any such future award by using, if necessary, Section 11580.2 of the Insurance Code as its authority for such lien in order to prevent double recovery and unjust enrichment on the part of claimant."

ments.[2] (Italics added.) As used in the Insurance Code, the word "shall" is mandatory and the word "may" is permissive. (Ins. Code, § 16.)

■ An initial issue stems from this difference in language. Waggaman urges that the use of the term "may" in the statute vests in the arbitrator's discretion as to whether or not to apply a reduction for workmen's compensation payments despite a contrary provision in the insurance policy. Such construction seems strained. The whole scheme of the statute addresses itself to contract provisions of the insurance policy, not the arbitrator's discretion.

In *Cannizzo* v. *Guarantee Ins. Co.*, 245 Cal.App.2d 70, 73 [53 Cal. Rptr. 657], the court held, in the absence of such a "shall" clause in the policy, there can be no reduction in the arbitrator's award for medical payments; the statute was explained as permitting such clauses, but having no independent effect. Since in some states such clauses have been held invalid,[3] the probable purpose of our statute is to make clear such clauses are valid in California. However, such clauses would be meaningless if Waggaman's interpretation of the statute were accepted; the most reasonable result is to give full effect to the mandatory language of the policy.

■ The determinative issue in the case at bar, then, is the meaning of the language "present value of all amounts payable" contained in both the statute and the insurance policy. Our research has not uncovered any legislative history relating to Insurance Code, section 11580.2, subdivision (h),[4] and there are no California cases interpreting the specific language with which we are concerned.

Cases cited by Waggaman for the proposition that recovery from a third party tortfeasor cannot be reduced by a compensation award (see *Slayton* v. *Wright*, 271 Cal.App.2d 219 [76 Cal.Rptr. 494]) are not in point. They do not interpret a statute or policy containing a provision that the award be reduced by the "present value of all amounts payable."

In the present case, the arbitrator properly made an allowance for appel-

---

[2] The parties have made reference solely to the "Uninsured Motorists Section" of the policy. The actual provisions of the policy which govern are contained in the "Special Provisions" which cover the policy when the laws of the State of California apply. We have used the policy language applicable to California, which is basically the wording of our uninsured motorist statute.

[3] (See Anno., Uninsured Motorist Coverage: Validity and Effect of Policy Provision Purporting to Reduce Coverage by Amount Paid under Workmen's Compensation Law, 24 A.L.R.3d 1369.)

[4] The statute was enacted prior to the full establishment of committee staff in both houses of the Legislature.

lant's reimbursement for the amounts Waggaman had actually received under workmen's compensation. However, the arbitrator refused to continue the hearing to allow appellant to call as its expert witness a disability rating specialist employed by the California Division of Industrial Relations Workmen's Compensation Appeals Board in order to testify as to "the present value of all amounts payable" under the workmen's compensation law. A similar offer of proof was advanced as a ground for rehearing. Both offers were rejected.

In reviewing this action, we have but two alternatives. We could hold either the arbitrator was required to determine the present value of the workmen's compensation benefits not yet awarded, or the decision to exclude the evidence as to the present value was correct. Neither is wholly satisfactory. However, for reasons which will become apparent, we conclude the arbitrator's decision was correct, and the language reducing the amount payable under the terms of the uninsured motorist statute by "the amount paid and the present value of all amounts payable" under the workmen's compensation law refers to amounts which have been paid or are fixed at the time of the arbitration hearing.

There is a distinction between cases where an award has been applied for and made, and those where, as here, the injured party may be eligible for an award, but has not applied for such, or no award has been granted. In the former, there is no problem in determining "the present value of amounts payable," the arbitrator may consult an actuarial table for that purpose. In the latter, the arbitrator is required to predict not only the amount of the award but also its existence, and then apply an actuarial table to his prediction. This procedure would encumber the arbitration proceedings with an inherently speculative trial within a trial.

It is virtually impossible to arrive at an accurate amount which will be paid under permanent disability awards of workmen's compensation when the insured is not yet ratable for permanent disability. Permanent disability is ". . . the irreversible residuals of an injury either mental or physical, which produce an impairment of earning power or capacity." (Cal. Workmen's Compensation Practice (Cont. Ed. Bar) § 17.1.) "A disability is permanent when the medical evidence establishes that no major change is expected for better or for worse and the condition will remain substantially the same during the remainder of the insured's lifetime." (Eisler, Cal. Uninsured Motorist Law Handbook (1969) p. 155.)

Many difficulties immediately come to mind in attempting to determine the present value of amounts payable in the future when present physical condition has not been determined, or established as being medically permanent, or when the case has not been rated.

Clearly, the statute requires the damages under uninsured motorist recovery be reduced by the present value of an award under the workmen's compensation procedure when the uninsured motorist coverage so provides.

However, when the phrase "present value of amounts payable" is considered in connection with the situation where an insured may be eligible for benefits but no award has been made, there is an ambiguity. Yet another ambiguity is presented by the silence of the policy as to methods of repayment or reimbursement for benefits still to be fixed. ■ Where there is ambiguity, the court has a duty to construe the uninsured motorist law in favor of the person injured through no fault of his own. (*Modglin* v. *State Farm Mut. Automobile Ins. Co.,* 273 Cal.App.2d 693, 698 [78 Cal.Rptr. 355]; *Valdez* v. *Federal Mut. Ins. Co.,* 272 Cal.App.2d 223, 226-228 [77 Cal.Rptr. 411].) ■ Likewise, ambiguous provisions of an insurance policy must be construed in favor of the policyholder and against the insurance company. (*Hendricks* v. *Meritplan Ins. Co.,* 205 Cal.App.2d 133, 138 [22 Cal.Rptr. 682] and cases cited therein.) ■ Similarly, when the insurer prepares the contract, ambiguous expressions whereby the insurer attempts to limit its liability should be construed most strongly against the insurer. (See *Jarrett* v. *Allstate Ins. Co.,* 209 Cal.App.2d 804, 809-810 [26 Cal.Rptr. 231].)

■ The construction to be given to insurance contracts should be, as in the case of all contracts, the reasonable and natural one. (See Civ. Code, § 1635 et seq.) If the language is clear, the terms are to be taken and understood according to their plain, ordinary and popular sense. ■ Construed in the popular sense, the words of both the statute and the policy, as the arbitrator stated, can be interpreted as ". . . referring to instances where the claimant has already secured an amount pursuant to agreement (compromise and release) or by order (permanent disability rating), but which amount, although fixed and determined, has not yet been paid to the claimant at the time of the arbitration hearing." This conclusion appears to us to be correct. The phrase "amounts payable" refers to vested amounts and not to the sum an expert witness estimates the insured may receive sometime in the future if he applies for and receives a disability rating.

The arbitrator's interpretation of the meaning of the statute and the policy was reasonable and would follow, in our mind, the understanding of the ordinary purchaser of insurance. Justice Learned Hand, in speaking of the language in an insurance policy, has stated: "An underwriter might so understand the phrase, when read in its context, but the application was not to be submitted to underwriters; it was to go to persons utterly un-

acquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts." (*Gaunt* v. *John Hancock Mut. Life Ins. Co.*, 160 F.2d 599, 601.)

There are inherently insurmountable problems if we were to adopt a rule requiring the arbitrator to attempt to predict the award under the workmen's compensation procedure. Almost invariably the award, when and if it were actually made, would vary from the arbitrator's prediction. Furthermore, requiring the arbitrator to admit evidence as to permanent disability and a possible award thereon would necessitate a trial within a trial. The net effect of such procedure would draw the arbitrator into the quicksand of speculation, and no doubt frustrate the public policy favoring arbitration as an expeditious method of settling disputes and avoiding delays caused by litigation. (*Jordan* v. *Pacific Auto. Ins. Co.*, 232 Cal.App.2d 127, 133 [42 Cal.Rptr. 556].)[5]

Thus, although ideally there should be no difference in result between those cases where a disability award has already been granted and those where it has not,[6] the procedures for settling uninsured motorist and workmen's compensation disputes operate to make it impossible to equate the two situations.

In reaching this result, we are aware that there are strong reasons which operate in favor of a different result.

Northwestern asserts upholding the arbitration award could permit unjust double recovery by Waggaman in the future when he might receive a permanent disability rating.

Certainly, as to amounts which have been either paid or have been fixed and determined, there is no contingency. Double recovery is prevented as to such sums. Deductions can be ordered by the arbitrator as to them. The myriad problems which arise should a court attempt to set up pro-

---

[5]It is for this reason that we do not consider the possibility of delaying the arbitration until there has been a formal rating for disability.

[6]There is language in *Slayton* v. *Wright, supra,* 271 Cal.App.2d 219, suggesting the distinction between those who had and those who had not been granted an award for permanent disability would produce a result "unconscionable and strictly dependent on chance." (P. 233.) Such distinction is particularly inappropriate when, as will often be the case, the prosecution of the workmen's compensation proceedings to an award is largely within the control of the injured party and, apparently, beyond the control of the uninsured motorist insurance carrier.

Although Labor Code section 5501 permits the filing of an application for determination of benefits by any party in interest, unless the uninsured motorist insurance carrier could qualify as a lien claimant it would not appear to be a party in interest, and, contrary to the opinion expressed by the arbitrator, it is doubtful that the uninsured motorist insurance carrier could qualify as a lien claimant. (See Lab. Code, § 4903.)

cedures for the proper determination of contingent, future and speculative amounts, which might be awarded for permanent disability in uninsured motorist cases, make it extremely difficult to construct workable rules. Such should be a legislative duty.

By permitting the parties to an uninsured motorist insurance policy to contract for a reduction of the loss payable "[b]y the amount paid and the present value of all amounts payable . . . under any workmen's compensation law . . ." (Ins. Code, § 11580.2, subd. (h)), the Legislature has made plain that there shall be no double recovery under the policy and under the workmen's compensation law when the parties have so agreed. Were it within our power to do so, therefore, we would disallow double recovery by giving the uninsured motorist insurance carrier a lien for reimbursement upon any future workmen's compensation benefits awarded, which would, in turn, give the uninsured motorist insurance carrier standing to initiate or intervene in the workmen's compensation proceedings pursuant to Labor Code section 5501. (Cf. *Scott* v. *Industrial Acc. Com.*, 46 Cal.2d 76, 85-86 [293 P.2d 18].)[7] The imposition of liens upon workmen's compensation benefits, however, is strictly limited by statute (see Lab. Code, § 4903) and, in any event, is a matter within the original jurisdiction of the Workmen's Compensation Appeals Board. Therefore, neither the arbitrator,

[7]While such a procedure would effectuate the apparent purpose of the Legislature in denying double recovery and in expediting payment under uninsured motorist insurance coverage (Ins. Code, § 11580.2, subd. (h), *supra*), it suggests a more fundamental question, to wit: When an employee in the scope of his employment is injured by a negligent third party uninsured motorist, who ultimately should bear the loss, the workmen's compensation insurance carrier or the uninsured motorist insurance carrier? Were the negligent third party insured, his liability carrier would bear the loss, for the employer and its compensation insurance carrier would, in the absence of the employer's concurrent negligence, be entitled to reimbursement for compensation benefits theretofore paid (Lab. Code, §§ 3852, 3853 and 3856) and a credit against future liability to the amount of .the third party judgment. (Lab. Code, § 3861). (*Slayton* v. *Wright, supra,* 271 Cal.App.2d 219, 230.)

Inasmuch as the apparent purpose of uninsured motorist coverage is to provide the injured party compensation equivalent to that he would have received had the negligent party been insured, logic would suggest the non-negligent employer and its insurance carrier should be entitled to similar reimbursement and credit when the injured employee recovers judgment against his uninsured motorist insurance carrier. The provision in Insurance Code section 11580.2, subdivision (h) permitting reduction of the uninsured motorist loss payable by the amount of workmen's compensation benefits indicates, however, that when the negligent third party is uninsured, the employer and its workmen's compensation insurance carrier are not to receive such reimbursement or credit, at least when the parties to the uninsured motorist coverage have so agreed. When coupled with our decision in the case at bench, the anomalous result is that when the negligent third party is uninsured, the injured employee may be able to recover more (the loss payable under the uninsured motorist coverage plus subsequently awarded workmen's compensation benefits) than that to which he would have been entitled had the negligent third party been fully insured. Quite obviously, the entire problem is in need of legislative attention.

nor the lower court, nor we, could properly grant to the uninsured motorist insurance carrier a lien upon the injured employee's workmen's compensation benefits.

In addition, it may be argued that the result herein might encourage an injured worker in an uninsured motorist case to delay filing a compensation claim until the uninsured motorist proceeding had been concluded. This problem, too, cannot be solved by a piecemeal, case by case approach. Only the Legislature can provide a comprehensive solution, as well as providing the proper forum for choosing between the competing values.

The judgment confirming the award of the arbitrator and denying petition to vacate such award is affirmed.

Gardner, P. J., and Kaufman, J., concurred.