UNITED STATES FIDELITY & GUARANTY COMPANY, Movant,

v.

Peggy SMITH, Respondent.

Supreme Court of Kentucky.

March 20, 1979.

Robert G. Breetz, Stites, McElwain & Fowler, Louisville, for movant.

Richard Frockt, Frockt & Klingman, Louisville, for respondent.

REED, Justice.

This is a "no fault" automobile insurance case which involves the problem of the extent of recovery of basic reparation benefits by the insured when he also effects recovery from collateral sources.

Peggy Smith is the widow of Michael Smith. He was employed as a police officer by the Jefferson County Police Department. United States Fidelity & Guaranty was the basic reparation obligor for Jefferson County insuring the police vehicle of officer Smith. U.S.F.&G. was also the workmen's compensation carrier covering Jefferson County policemen. On March 11, 1976 Smith was killed in a work-connected accident when he had a vehicle collision with a car driven by Howard Middleton. Middleton had liability coverage with State Farm Insurance Company. The policy limits were $25,000.

Following Smith's death, his widow received workmen's compensation benefits at a rate of $96.00 per week from U.S.F.&G. until she settled with Middleton and his liability carrier, State Farm, on a third-party tort-feasor claim under KRS 342.700.

The Workmen's Compensation Board approved an agreement dated September 17, 1976. Pursuant to the provisions of this agreement, State Farm paid its liability policy limits of $25,000 to Mrs. Smith. The board ordered that U.S.F.&G. pay the burial allowance of $1500 under the compensation Act and, after allowing Mrs. Smith's attorney an agreed fee of $8,750 (35% of the

$25,000 settlement) and expenses of $50.00, ordered that the balance of $16,200 be allowed as a credit at the maximum rate of $96.00 each week against workmen's compensation benefits to be paid by U.S.F.&G. in the future. U.S.F.&G.'s right to reimbursement for compensation paid from the recovery from the third-party tort-feasor granted by KRS 342.700 was thus protected.

U.S.F.&G. does not deny that it was a party to and apprised of all facts surrounding the settlement. It endorsed the settlement draft. In the agreement, Mrs. Smith released Middleton and State Farm from tort liability but expressly reserved all rights to proceed against U.S.F.&G. as the "no fault" insurer of her husband's police vehicle for any and all benefits due her pursuant to the Kentucky Motor Vehicle Reparation Act. (KRS 304, Subtitle 39).

Alleging that her loss exceeded the collateral benefits received, Mrs. Smith sued U.S. F.&G. for basic reparation benefits under the Motor Vehicle Reparation Act. U.S. F.&G. defended on the basis that the benefits received by Mrs. Smith under the Workmen's Compensation Act and the proceeds from the settlement with the third-party tort-feasor each exceeded its policy limits of liability for basic reparation benefits, therefore it asserted exoneration from responsibility. U.S.F.&G. and Mrs. Smith also disagreed concerning this insurer's obligation to pay funeral expenses in addition to the $1500 burial allowance she received under the Workmen's Compensation Act. In her suit, Mrs. Smith also joined as defendants, the Kentucky Assigned Claims Bureau, its insurance carrier, and Firemen's Fund American Insurance Company, the no fault insurer of officer Smith's personal vehicle.

The circuit court dismissed the complaint against all defendants. The Court of Appeals affirmed the dismissal as to all defendants except U.S.F.&G. As to it, the Court of Appeals reversed and remanded the cause to the circuit court for further proceedings with directions that: "If it should be determined in those proceedings that the insured incurred loss not otherwise compensated, the insurer, U.S.F.&G., shall be liable for that loss not to exceed the limits of liability as set forth in the policy of insurance." Only U.S.F.&G. moved for discretionary review by this court. We granted the motion. We confine our consideration to the correctness of the decision of the Court of Appeals as to U.S.F.&G. We affirm that decision.

■ The keystone of U.S.F.&G.'s case is its overbroad construction of the effect of KRS 304.39–070(2), which provides:

"A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated *to the extent of its obligations* to all the rights of the person suffering the injury against any person or organization *other than a secured person.*" (emphasis supplied).

U.S.F.&G. argues that this statutory provision vests in it the right to credit all collateral payments received by its insured to reduce its obligation to pay basic reparation benefits, and that regardless of the element of loss for which the collateral source payment compensates, it may be used by the insurer as a credit to satisfy even a potential obligation to pay basic reparation benefits.

KRS 304.39–070(2) by its provisions did not operate to constitute U.S.F.&G. a statutory "subrogee" of Mrs. Smith. She asserted her tort rights against "a secured person." KRS 304.39–070(1) defines "secured person" as meaning "the owner, operator or occupant of a secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." KRS 304.-39–080(1) states: " 'Security covering the vehicle' is the insurance or other security so provided. The vehicle for which the security is so provided is the 'secured vehicle' ".

Therefore, we are persuaded that U.S. F.&G. was not a statutory "subrogee" in the sense that term is used in other provisions of the concerned statutory sections such as KRS 304.39–140(3), because its insured's tort rights were asserted against "a secured person."

KRS 304.39–140(3) provides: "If the injured person, or injured persons, is entitled to damages under KRS 304.39–060 from the liability insurer of a second person, a self-insurer or an obligated government, collection of such damages shall have priority over the rights of the subrogee for its reimbursement of added reparation benefits paid to or in behalf of such injured person or persons."[1] We regard this statutory section inapplicable to this case since it addresses itself to priority between the insured collecting collateral payments and his insurer which is a statutory "subrogee."

KRS 304.39–070(3) afforded U.S.F.&G. a measure of protection which it did not take. That section states:

"A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, except as provided in KRS 304.39–140(3). The reparation obligor shall elect to assert its claim (i) by joining as a party in an action that may be commenced by the person suffering the injury, or (ii) to reimbursement, pursuant to KRS 304.39–030, sixty (60) days after said claim has been presented to the reparation obligor of secured persons. The right to recover basic reparation benefits paid under (ii) shall be limited to those instances established as applicable by the Kentucky Insurance Arbitration Association as provided in KRS 304.39–290."

Despite U.S.F.&G.'s misplaced reliance on KRS 304.39–070(2) and its failure to observe the requirements to receive the protection extended to it by KRS 304.39–070(3), we are convinced, nevertheless, that the statutory scheme is purposefully designed to prevent an insured from receiving a double recovery for the same element of loss. *Cf. State Farm Mutual Automobile Insurance Company v. Fletcher* and *The*

*Western Fire Insurance Company v. Downs*, Ky., 578 S.W.2d 41 (1979). The mandate of KRS 304.39–050(3) is clear. No person shall recover basic reparation benefits from more than one reparation obligor as a result of the same accident (subject to an inapplicable exception in the case before us) and no person shall recover more than $10,000 of basic reparation benefits as the result of the same accident.

We agree with the Court of Appeals that the extent of U.S.F.&G.'s obligation, if any, to Peggy Smith cannot be determined without computing her net economic loss.

As a result of the death of her husband, from injury in a motor vehicle collision, Peggy Smith became entitled to recover from the insurer basic reparation benefits for net economic loss to a maximum of $10,000 without proving fault, and to recover from the tort-feasor the balance of her economic loss and all other nonduplicative damages allowable under general tort law. *See Fann v. McGuffey*, Ky., 534 S.W.2d 770, 772, 773 n.16 (1975) and KRS 304.39–060(2)(b).

KRS 304.39–020(2) defines "basic reparation benefits" as reimbursement for net loss. In the same statutory section "loss" is defined as "accrued economic loss consisting only of medical expense, work loss, replacement services loss; and if injury causes death, survivor's economic loss and survivor's replacement services loss." The same section later defines "net loss." " 'Net loss' means loss less benefits or advantages, from sources other than basic and added reparation insurance, required to be subtracted from loss in calculating net loss." KRS 304.39–120 specifies the deductible sources. They are social security, workmen's compensation, and a 15% income tax advantage under given conditions.

We reject U.S.F.&G.'s argument that the collateral payments should be subtracted · from its policy limits. The trial court should first determine Mrs. Smith's

---

1. This language of the statute was in effect at the time this action was prosecuted. In 1978 the General Assembly added the words "basic or added" in lieu of "added" only. U.S.F.&G. concedes that it could not prevail in view of the 1978 legislative declaration if the same factual situation were presented today.

accrued economic loss as defined herein. From this amount the deductions authorized by KRS 304.39–120 should be made. The resulting amount is economic net loss for which U.S.F.&G. is liable up to its policy limits of $10,000. Any payment from a third party that is demonstrated to be impermissibly duplicative in violation of KRS 304.39–050(3) should be credited against the liability, if any, of U.S.F.&G. When making the necessary computations, the trial court will deal with the effect of KRS 304.-39–130. That section provides that basic reparation benefits payable for work loss, survivor's economic loss, replacement services loss, and survivor's replacement services loss may not exceed $200 per week. In our view, this $200 limit is a limit on benefits to be paid and not a limit on "loss" or "net loss" which go into the calculation of basic reparation benefits. See Uniform Motor Vehicle Accident Reparations Act Sec. 13, Comment [13 U.L.A. 388].

█ The remaining issue concerns the payment of funeral expense. The Workmen's Compensation Act provides a death burial benefit of $1500. The Kentucky No-Fault statute also provides for payment of "a total charge not in excess of one thousand dollars" for funeral expense. It is regarded as "medical expense" under KRS 304.39–020(5). The Court of Appeals held that if the actual expense to the insured exceeded the benefits he received from workmen's compensation, the insurer was liable for that expense up to the limits of the policy. We think that conclusion is supported by *Comeau v. Safeco Ins. Co. of America*, 356 So.2d 790 (Fla.1978) which U.S.F.&G. concedes destroys its argument that workmen's compensation benefits are to be subtracted from its policy limits. We believe the same basic rationale applies to the funeral expenses.

The decision of the Court of Appeals is affirmed. The judgment of the Jefferson Circuit Court is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

All concur.