No. 66,481

JAMES P. HOUSE, *Appellant,* v. AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, *Appellee.*

(837 P.2d 391)

Opinion filed July 10, 1992.

*Kathryn D. Meyers,* of Bryan, Lykins & Hejtmanek, P.A., of Topeka, argued the cause, and *John J. Bryan,* of the same firm, was with her on the briefs for appellant.

*Steven R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a first-impression statutory interpretation case. The statute in question is K.S.A. 40-3110(a) (personal injury protection [PIP] benefits under no-fault auto insurance credited by workers compensation benefits paid). The crafting of a resolution requires the blending of statutory and insurance policy references to PIP payments and workers compensation benefits. Our resolution is linked to legislative intent and the language of the insurance policy.

The district court entered summary judgment for American Family Mutual Insurance Company (American Family), James House's auto insurance carrier. The Court of Appeals affirmed in an unpublished opinion filed December 13, 1991.

We granted House's petition for review.

The issue is whether, under K.S.A. 40-3110(a), House is entitled to PIP benefits from his carrier, American Family. Is the statutory credit for workers compensation benefits to be applied to the total wage loss, i.e., House's pre-accident monthly income, or to the maximum PIP benefits payable under the policy? We endorse the latter, affirming the district court and the Court of Appeals.

### Facts

House was injured in a vehicle accident in the course of his employment as a bus driver. He received workers compensation benefits, including $983.67 per month for lost wages.

His average monthly income before the accident was $1,475.50. There was a difference of $491.83 per month between his wages and his workers compensation benefits.

House's personal automobile policy with American Family included PIP coverage of 85% of lost wages not to exceed $650 per month. The PIP endorsement to the policy provided that the PIP coverage would be reduced by the amount payable for bodily injury under any workers compensation law.

### The Parties' Contentions

American Family contends that it has no liability to House for PIP benefits because the amount of his workers compensation

benefits exceeds the policy limits, *i.e.*, $983.67 is greater than $650.

House contends that his monthly PIP benefits should be $418.06. $418.06 is 85% of $491.83, which is the difference between his pre-accident monthly income ($1,475.50) and his monthly workers compensation benefits ($983.67).

House also filed suit against the bus company's insurer and Kansas Insurance Guaranty Association; both were eventually dismissed from the action.

## Lower Court Rulings

The material facts are not in dispute and the issue before the trial court was a question of law; the case was ripe for summary adjudication. See *Patterson v. Brouhard,* 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

The district court and the Court of Appeals agreed with American Family's contention, concluding that House was not entitled to PIP benefits because PIP benefits were to be reduced by any workers compensation benefits. The maximum PIP benefits payable under the American Family policy ($650) minus his monthly payment under workers compensation ($983.67) is zero.

As a threshold observation we note that K.S.A. 40-3110(a) provides: "No claim for personal injury protection benefits may be made after two (2) years from the date of the injury." House was injured in 1984; the petition was filed in 1989. American Family raised the statute of limitations as a defense to House's claim. Neither the district court nor the Court of Appeals reached the limitation claim. Because we find that House is not entitled to receive PIP benefits under the policy, there is no need for us to address the issue.

## K.S.A. 40-3110(a)

PIP benefits are defined in the Kansas Automobile Injury Reparations Act (no-fault act), K.S.A. 40-3101 *et seq.*, as "disability benefits, funeral benefits, medical benefits, rehabilitation benefits, substitution benefits and survivors' benefits required to be provided in motor vehicle liability insurance policies pursuant to this act." K.S.A. 1991 Supp. 40-3103(q). "Disability benefits" are defined to include lost wages. K.S.A. 1991 Supp. 40-3103(b). K.S.A. 40-3107(f) provides, in part, that every policy of vehicle

liability insurance issued to an owner residing in Kansas shall "include personal injury protection benefits to the named insured . . . not exceeding the limits prescribed for each of such benefits, for loss sustained by any such person as a result of injury."

K.S.A. 40-3110(a) provides in part:

"Except for benefits payable under any workmen's compensation law, *which shall be credited against the personal injury protection benefits* provided by subsection (f) of K.S.A. 40-3107, personal injury protection benefits due from an insurer or self-insurer under this act shall be primary and shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy issued in compliance with this act." (Emphasis added.)

House's motor vehicle liability insurance policy with American Family contained a PIP endorsement with the following provisions:

"2. Limits of Liability

. . . .

"c. For work loss the maximum amount payable:

(1) Shall not exceed $650 per month for a period of no more than 1 year . . .; and

(2) Shall be limited to 85% of any such work loss . . . .

. . . .

"g. Any amount payable by us under this coverage shall be reduced by the amount payable for bodily injury under the workmens' compensation law or disability benefits law or any similar law."

House argues that the purpose of the no-fault act and Kansas case law favoring insureds require us to afford him the greatest possible protection. He cites K.S.A. 40-3102: "The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein." As expressions of policy favoring the insured, House relies on *Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, 646, 512 P.2d 507 (1973) (superseded by K.S.A. 40-3108[a], which permits an insurer to disallow "stacking" of certain PIP benefits), and on *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976) (which set out the rationale for allowing the insured to stack two automobile policies).

In *Van Hoozer*, we quoted the following from *Van Tassel v. Horace Mann Mutual Ins. Co.*, 296 Minn. 181, 187, 207 N.W.2d 348 (1973):

" 'But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium.' " 219 Kan. at 610.

Having advanced the quote from *Van Tassel* as an expression of policy favoring the insured, House denies that he would receive a windfall if the policy and statute were to be interpreted in his favor. Under the American Family policy, in the case at bar, he would not receive more than 85% of the shortfall between his pre-accident income and his workers compensation lost wages benefits.

"The fundamental rule of statutory construction is that the intent of the legislature governs. [Citation omitted.] When construing a statute, a court should give words in common usage their natural and ordinary meaning. [Citation omitted.]" *Hill v. Hill*, 13 Kan. App. 2d 107, 108, 763 P.2d 640 (1988).

K.S.A. 40-3110(a) clearly states that PIP benefits are primary; however, benefits payable under the Workers Compensation Act "shall be credited against" PIP benefits.

The question for resolution is whether the workers compensation credit shall be applied against the total wage loss (pre-accident monthly income) or against the maximum PIP amount payable under the policy.

Both parties cite *Egy v. United States Fidelity & Guaranty Co.*, 8 Kan. App. 2d 144, 651 P.2d 954 (1982), *aff'd* 233 Kan. 234, 661 P.2d 1239 (1983). Egy was injured in an automobile accident. He claimed both workers compensation benefits from his employer's insurance carrier and PIP benefits from his personal automobile insurance carrier. Both insurers refused to pay because it was unclear whether Egy was in the course of employment at the time of the accident. 8 Kan. App. 2d at 145. The Court of Appeals held that Egy had no right to recover PIP benefits until his employment status had been adjudicated. 8 Kan. App. 2d at 152-53.

*Egy* does not directly address the issue before us in the instant case. The parties in *Egy* settled as to the obligation of the au-

tomobile insurer for PIP wage loss benefits attributable to that portion of Egy's wage loss which was unsatisfied by the payment of temporary total disability compensation. 8 Kan. App. 2d at 147. The *Egy* court reasoned that the Workers Compensation Act and the automobile liability policy afforded Egy "concurrent entitlement to benefits subject only to applicable exclusions and coordination, or primacy." 8 Kan. App. 2d at 150. The phrase, "applicable exclusions and coordination," however, was not defined.

The language of the policy limitation on the automobile insurer's obligation to pay PIP benefits in *Egy* is virtually the same as that in House's policy. "[A]ny amount payable by the Company under the terms of this coverage shall be reduced by the amount payable on account of such bodily injury under [the Workmen's Compensation Act of Kansas]." The *Egy* court approved this language as in accord with K.S.A. 40-3110(a), 8 Kan. App. 2d at 145, observing:

"Under the facts of this case, the trial judge's decision that plaintiff was entitled to payment of benefits under defendant's PIP coverage was not correct if the policy provision limiting such benefits by reduction therefrom of 'the amount payable on account of such bodily injury under [the Workmen's Compensation Act of Kansas]' was applicable." 8 Kan. App. 2d at 149.

A number of other jurisdictions have discussed the "workers compensation benefit credit" issue. Annot., 10 A.L.R.4th 996, § 4. A review of the annotation indicates support for House's argument. However, the relevant statutes in certain jurisdictions require subtraction of workers compensation benefits from a plaintiff's actual loss to determine the net loss which would remain compensable under no-fault coverage. See, *e.g., United States Fidelity & Guaranty Co. v. Smith,* 580 S.W.2d 216 (Ky. 1979); *Motley v. State Farm Mut. Ins. Co.,* 502 Pa. 335, 466 A.2d 609 (1983).

Conversely, support is also found for American Family's position. See, *e.g., Hines v. Potomac Elec. Power Co.,* 305 Md. 369, 504 A.2d 632 (1986); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 444 A.2d 1024 (1982); *Featherly v. AAA Ins. Co.,* 119 Mich. App. 132, 326 N.W.2d 390 (1982). The statutes in Maryland and Michigan specifically provide, as does K.S.A. 40-3110(a), that

workers compensation benefits shall be credited against PIP benefits payable.

The trial court, in the case at bar, cited *Scudella v. Illinois Farmers Insurance Co.*, 174 Ill. App. 3d 245, 528 N.E.2d 218 (1988), *appeal denied* 124 Ill. 2d 562 (1989), which held that an auto insurer was entitled to offset workers compensation payments against PIP payments.

House relies on *Comeau v. Safeco Ins. Co. of America*, 356 So. 2d 790 (Fla. 1978). The statute in *Comeau* is substantially the same as K.S.A. 40-3110(a). "(4) Benefits; When Due. Benefits due from an insurer under ss. 627.730-627.7405 shall be primary, except that benefits received under any workers' compensation law shall be credited against the benefits provided by subsection (1) and be due and payable as loss accrues . . ." Fla. Stat. § 627.736 (1990 Supp.). The *Comeau* court held that "an insurer is required to supplement workmen's compensation benefits until the insurer has itself paid the limits of liability under its policy for required personal injury protection benefits." 356 So. 2d at 794. The Florida Supreme Court reasoned that PIP coverage is primary and therefore PIP benefits should be paid in full whether or not any other coverage exists. The statutory provision granting credit for workers compensation benefits merely prevents recovery greater than the plaintiff's actual loss. 356 So. 2d at 794.

The trial court, in the case at bar, rejected the reasoning in *Comeau*. Instead, the trial court noted that neither the Workers Compensation Act nor the no-fault act provide full wage replacement. Additionally, K.S.A. 40-284(e) allows uninsured motorist coverage to be excluded or limited to the extent that workers compensation benefits apply. Thus, the trial court concluded that the statutory schemes are designed to "assure basic relief and allocate risk, not effect reparations." The credit of workers compensation benefits against PIP benefits assures that employers, not automobile liability insurers and their policy holders, bear the cost of employee on-the-job injuries, an allocation clearly within the legislature's prerogative. There is no windfall to the automobile insurer because surely the carrier considered this factor in calculating its risk, and hence the cost of coverage. The "no windfall" rationale of the trial court has been endorsed in *Smelser*. 293 Md. at 394.

There are credible arguments in support of both House's and American Family's interpretations of K.S.A. 40-3110(a).

House's rationale suggests that the coordination of workers compensation benefits and PIP benefits is accomplished by reducing PIP benefits by workers compensation benefits only to the extent necessary to prevent the worker's total benefits from exceeding his total lost wages. Where the wage loss resulting from a vehicle accident in the course of employment is partially paid by workers compensation, that portion remaining unpaid is a loss which PIP benefits were intended to compensate. The insurer is required to pay the balance up to the maximum amount recoverable under the PIP endorsement.

We do not find support for House's rationale in K.S.A. 40-3110(a). The expression of such a rationale is, in our view, a matter of legislative policy.

House argues that the reasoning of the cases he cites from other jurisdictions coincides with the reasoning recently employed in *Rich v. Farm Bur. Mut. Ins. Co.*, 250 Kan. 209, 824 P.2d 955 (1992). In *Rich*, we reversed the trial court's ruling that the insurance carrier "was entitled to set off the underinsured motorist benefits it owed against the nonduplicative PIP benefits it previously paid." 250 Kan. at 210.

The trial court's ruling in *Rich* was based on K.S.A. 1991 Supp. 40-284(e)(6), which provides: "(e) Any insurer may provide for the exclusion or limitation of coverage: . . . (6) to the extent that personal injury protection benefits apply." The insurer argued that 40-284 allows exclusion of both duplicative and nonduplicative PIP benefits. We rejected the argument and held that "the legislature intended K.S.A. [1991 Supp.] 40-284(e)(6) to permit an insured to recover underinsured motorist benefits which are not duplicative of PIP benefits." 250 Kan. at 216.

The parties in *Rich* stipulated that none of the damages Rich as plaintiff claimed under the uninsured motorist coverage were damages to which PIP benefits "apply." 250 Kan. at 211. Consequently, under the facts in *Rich*, the underinsured motorist benefits claimed were for damages to which PIP benefits did not apply.

K.S.A. 40-3110(a) states that workers compensation benefits shall be credited against PIP benefits. The trial court, in the case

at bar, followed the statute, crediting the workers compensation benefits against PIP benefits.

### American Family's Policy

Insurance policies are to be enforced as written so long as the terms do not conflict with pertinent statutes or public policy. Where terms are ambiguous, the policy shall be construed to mean what a reasonable person in the position of the insured would have understood them to mean. A policy is not ambiguous, however, unless there is genuine uncertainty as to which of two or more possible meanings is proper. See *Penalosa Co-op Exchange v. Farmland Mut. Ins. Co.*, 14 Kan. App. 2d 321, 322-23, 789 P.2d 1196, *rev. denied* 246 Kan. 768 (1990), and cases cited therein.

The American Family policy unambiguously states that "any amount payable" under PIP coverage shall be reduced by the amount payable under workers compensation. The maximum amount payable under plaintiff's PIP coverage was $650 per month. Since House received a greater monthly payment under workers compensation, the trial court and the Court of Appeals correctly ruled in American Family's favor.

We emphasize the plain meaning of K.S.A. 40-3110(a) and the reduction of PIP benefits language in the American Family policy.

If the intent of the Kansas Legislature was to make workers compensation benefits primary, but to require the payment of any remaining uncompensated wage losses by auto insurers as excess coverage, that intent would be apparent somewhere in the language of the pertinent statutes. We find no suggestion that any such result is expected or intended.

The dissent references *Todd v. Kelly*, 251 Kan. 512, 837 P.2d 381 (1992). *Kelly* is also a statutory interpretation case. The dissent suggests that the statutory construction analysis we applied to the question in *Kelly* should be advanced as the analysis to the statutory construction question in the instant case. The questions are not the same. Differing questions frequently call for a differing analysis. Such is the situation in the case at bar and *Kelly*.

In *Kelly*, the Court of Appeals for the Tenth Circuit certified a statutory construction case to us. Two statutes, K.S.A. 40-

3403(e) and K.S.A. 40-3422, relating to the Health Care Provider Insurance Availability Act, K.S.A 40-3401 *et seq.,* conflicted.

The case at bar neither involved directly conflicting statutes, as did *Kelly,* nor requires the *Kelly* statutory construction analysis.

Affirmed.

ALLEGRUCCI, J., dissenting: I disagree with the majority decision. The majority finds no support for House's position in K.S.A. 40-3110(a), nor does it find any evidence that the legislature intended that House recover his full wage loss. I find such support in K.S.A. 40-3102, which provides: "The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein." In *Manzanares v. Bell,* 214 Kan. 589, 608, 522 P.2d 1291 (1974), Chief Justice Fatzer, referring to this section of the no-fault act, stated:

"This is the heart of the Act. The rest treats of [details] and procedures. The legislation forms the basis for a different approach in solving the inadequacies of the tort liability system, and provides a new method of affording prompt compensation to motor vehicle accident victims. Under the declaration of Section 2 and other provisions of the Act, we now approach reparation of motor vehicle accident victims on the basis of the interest of all the citizens of this state without losing sight of, but tempering, the right of an individual to pursue traditional remedies in tort. . . .

"It is evident the Legislature was concerned with the possible burden on society occasioned by inadequate or nonexistent compensation for economic loss suffered by motor vehicle accident victims, particularly when viewed in the context of the large number of persons and total financial loss involved. By requiring motor vehicle liability policies to include first party PIP benefits, the Legislature may have eliminated the former necessity of resorting to litigation in many cases. The requirement of PIP coverage bears a reasonable relation to the subject of reparation for losses arising out of the ownership and operation of motor vehicles."

The effect of the majority's decision is to discourage prompt and full compensation for an injured victim. Clearly, that is contrary to the purpose of no-fault legislation.

The majority also fails to find support for House's argument in our recent decision in *Rich v. Farm Bur. Mut. Ins. Co.,* 250 Kan. 209, 824 P.2d 955 (1992). I disagree. In *Rich,* this court reversed the district court's ruling that the insurance carrier "was

entitled to set off the underinsured motorist benefits it owed against the nonduplicative PIP benefits it previously paid." 250 Kan. at 210. This court's disapproval of the district court's ruling was based in large measure on plaintiff's contention the legislature did not intend to allow insurers to collect separate premiums for PIP and uninsured/underinsured motorist coverage and "at the same time permit those same insurers to deny nonduplicative coverage of their injured insureds." 250 Kan. at 213.

In the present case, House's workers compensation benefits were paid by his employer's insurer, and he sought to recover PIP benefits from his personal automobile insurance carrier. In *Rich*, the insured sought to recover PIP and underinsured benefits from the same carrier, his own automobile liability insurer. Nonetheless, there is a common principle involved in these cases, and that is the payment of a premium with the reasonable expectation that it was purchasing nonduplicative coverage from the insurer.

In *Rich*, the trial court's ruling was based on K.S.A. 1991 Supp. 40-284(e)(6), which provides as follows: "(e) Any insurer may provide for the exclusion or limitation of coverage: . . . (6) to the extent that personal injury protection benefits apply." In the present case, the Court of Appeals' opinion contains the observation that "K.S.A. 40-284(e)(4) allows uninsured motorist coverage to be excluded to the extent that workers compensation benefits apply." K.S.A. 1991 Supp. 40-284(e)(4) provides: "(e) Any insurer may provide for the exclusion or limitation of coverage: . . . (4) to the extent that workers' compensation benefits apply." In *Rich*, the insurer argued that 40-284 allows exclusion of both duplicative and nonduplicative PIP benefits. This court rejected the argument and held that "the legislature intended K.S.A. 40-284(e)(6) to permit an insured to recover underinsured motorist benefits which are not duplicative of PIP benefits." 250 Kan. at 216.

In *Rich*, the insured was a passenger in a one-car accident. He received $25,000 from the driver's insurance carrier and $50,000 from the owner's insurance carrier, the policy limits in each case. He had underinsured motorist coverage of $100,000. He received $40,667.52 in PIP benefits from his insurer, who thereafter refused to pay the balance of $25,000 in underinsured

motorist claims because the $40,667.52 in PIP benefits exceeded the $25,000. The parties stipulated that the insured's damages would exceed $177,000. The result of our decision in *Rich* was to allow the insured to recover $100,000 in underinsured benefits and $40,667.52 in PIP benefits. The majority seems to distinguish *Rich* from the present case on the basis that the parties stipulated that none of the damages claimed under the underinsured motorist coverage included damages covered by PIP. The only importance of that stipulation was that the damages were not duplicative. It does not support the majority's denying PIP benefits to House simply because he was partially indemnified by workers compensation.

The wage loss in the present case is not duplicative, and the rationale of *Rich* is applicable. Here, as in *Rich,* we are concerned with compensation for the total loss suffered by the victim of a motor vehicle accident. Here, as in *Rich,* the primary coverage is not adequate to fully compensate the victim. Here, as in *Rich,* we have the premiums paid for coverage of the loss. In such a case, the setoff should apply only where the PIP benefits are duplicative. House should not be denied PIP benefits simply because he was partially compensated by workers compensation.

As noted by the majority, House's argument finds support in other jurisdictions. In *Walkowitz v. Royal Globe Insurance Company,* 149 N.J. Super. 442, 445-46, 374 A.2d 40 (1977), the Superior Court of New Jersey, in holding a similar workers compensation setoff provision void and unenforceable, stated:

"Our holding is supported by the overwhelming weight of authority throughout the country. No useful purpose would be served by listing the cases following the majority view because most of them have been catalogued in *Sweeney v. Hartford Acc. & Indem. Co.,* 136 N.J. Super. 591, 594, n.2, 347 A.2d 380 (Law Div. 1975), wherein Judge Smith held the identical worker's compensation setoff provision void and unenforceable as against public policy. See also Annotation, 'Uninsured Motorist Coverage: Validity and Effect of Policy Provision Purporting to Reduce Coverage by Amount Paid Under Workmen's Compensation Law,' 24 A.L.R.3d 1369, 1374-1376 (1969). *Contra: Waggaman v. Northwestern Security Ins. Co.,* 16 Cal. App. 3d 571, 94 Cal. Rptr. 170 (D. Ct. App. 1974); *Ullman v. Wolverine Ins. Co.,* 48 Ill. 2d 1, 269 N.E.2d 295 (Sup. Ct. 1970); *Michigan Mut. Liab. Co. v. Mesner,* 2 Mich. App. 350, 139 N.W.2d 913 (App. Ct. 1966); *Hackman v. American Mut. Liab. Ins. Co.,* 110 N.H. 87, 261 A.2d 433 (Sup.

Ct. 1970); *Durant v. Motor Vehicle Acc. Indem. Corp.,* 15 N.Y.2d 408, 260 N.Y.S.2d 1, 207 N.E.2d 600 (Ct. App. 1965)."

A review of Annot., 10 A.L.R.4th 996, indicates a majority of jurisdictions still support House's argument.

*Comeau v. Safeco Ins. Co. of America,* 356 So. 2d 790 (Fla. 1978), is representative of that support. The statutes and policy provisions in *Comeau* are, for purposes of determining the issue presented in the present case, indistinguishable. The Florida Supreme Court stated:

"We agree with petitioner's position and disagree with the holding of the District Court of Appeal, First District, sub judice, that the total aggregate limit of personal injury protection benefits available with respect to such bodily injury shall be reduced by the amount of workmen's compensation benefits received. Rather, we hold that an insurer is required to supplement workmen's compensation benefits until the insurer has itself paid the limits of liability under its policy for required personal injury protection benefits. The legislative intent behind Section 627.736(4), Florida Statutes (1975), is that whenever an automobile accident occurs, the personal injury protection benefits are primary and that they are to be paid in full whether or not any other coverage exists. If workmen's compensation benefits are available, personal injury protection benefits are still primary; however, to the extent that payments of workmen's compensation are made, personal injury protection benefits are supplemental until either the injured party has been fully compensated or until the personal injury protection insurer has paid the full $5,000.00 in such supplemental payments. This statutory provision is intended to give a credit, as a loss accrues, for workmen's compensation benefits, thereby preventing one from recovering for a loss which is not sustained because of workmen's compensation benefits, and is not intended to reduce the limits of liability under the statutory minimum required for personal injury protection benefits." 356 So. 2d at 794.

The majority cites the fundamental rule of statutory construction that the intent of the legislature governs. It then proceeds to give "words in common usage their natural and ordinary meaning" in interpreting K.S.A. 40-3110(a) to clearly preclude House's claim.

In *Todd v. Kelly* 251 Kan. 512, 837 P.2d 381 (1992), this court was called upon to interpret the meaning of K.S.A. 40-3422. A judgement was entered against a health care provider for $21,244,824.90 plus interest and costs, and Insurance Commissioner Todd, on behalf of the Fund, appealed. Federal District Court Judge Patrick Kelly interpreted K.S.A. 40-3422 to require

that Todd, on behalf of the Fund, post an appeal bond in the full amount of the judgment, notwithstanding that K.S.A. 1991 Supp. 40-3403(e) limited the Fund's liability to $3,000,000. This court, in ruling that the commissioner was not required to post a bond in the full amount of the judgment, iterated a number of basic rules of statutory construction not mentioned by the majority in the present case:

" 'In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' *In re Marriage of Ross,* 245 Kan. 591, 594, 783 P.2d 331 (1989).

" '[T]he court must give effect to the legislature's intent even though words, phrases or clauses at some place in the statute must be omitted or inserted.' *Ross,* 245 Kan. at 594.

" 'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.'* *Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975)." 251 Kan. at 516.

This court then said:

"We agree with the trial judge that K.S.A. 40-3422, when read in isolation, is clear and unambiguous and appears to require a supersedeas bond in the full amount of the judgment. However, as the foregoing rules and authorities clearly demonstrate, such a simplistic and narrow reading of the statute is not available to us. K.S.A. 40-3422 may not be read in isolation but may only be considered in connection with the other provisions of the Health Care Provider Insurance Availability Act, K.S.A. 40-3401 *et seq.*" 251 Kan. at 516.

In my opinion, the interpretation of K.S.A. 40-3110(a) by the majority is too simplistic and narrow and contravenes the purpose of the Automobile Injury Reparations Act. The legislature intended that an injured victim be fully, not partially, compensated for his or her loss. PIP benefits are primary when a party is injured in a motor vehicle accident. These benefits are payable irrespective of additional coverage. If, as here, workers compensation benefits cover only part of the loss, PIP benefits are primary

to the loss not covered. In the instant case, since House continued to suffer a loss after workers compensation was paid, he is entitled to the PIP benefits. I would reverse the district court and the Court of Appeals.